Larry Keith ROBISON, Appellant,

v.

The STATE of Texas, Appellee.

No. 69976.

Court of Criminal Appeals of Texas, En Banc.

June 29, 1994.

John C. Beatty and Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, David L. Richards, and Greg Pipes, Asst. Dist. Attys., Fort Worth, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MEYERS, Judge.

Appellant was convicted of Capital Murder for intentionally killing Bruce Gardner in the course of committing robbery. Tex.Penal Code Ann. § 19.03(a)(2). After the jury returned an affirmative answer to both special issues, the judge assessed a sentence of death. Tex.Code Crim.Proc.Ann. art. 37.071(b). The judgment of the trial court is affirmed.

We have seen appellant's case before. In 1986, we reversed appellant's first conviction for this offense because of jury selection error. *Robinson (sic) v. State,* 720 S.W.2d 808 (Tex.Crim.App.1986). Appellant was retried, and his second conviction is the basis of this opinion.

Appellant does not challenge the sufficiency of the evidence.

### I.

Appellant presented an insanity defense at trial. In his first three points of error, appellant complains of article 46.03, section 1(e), of the Texas Code of Criminal Procedure, which provides that where such a defense is presented, neither the judge, defense attorney, nor the prosecutor may inform the veniremembers of the consequences of a finding of not guilty by reason of insanity.

In appellant's first point of error, he complains the trial court erred by not permitting him to tell the veniremembers of this prohibition. As early as the fourth veniremember, appellant's counsel attempted to inform the potential juror that, "[if] you find the Defendant not guilty by reason of insanity, then unfortunately, the law—we're not able to tell you what the procedure is." The State's objection to this comment was sustained. The veniremember was excused, and a discussion between the court and the attorneys took place at the bench. Appellant's counsel informed the court that he did not wish to inform the venire of the consequences of a finding of not guilty by reason of insanity, but rather, "[he wanted] to be able to tell each and every juror that the law does not allow us to inform them as to what the result will be." The trial court again sustained the State's objection.

Our legislature has seen fit to prohibit informing potential jurors of the procedures which follow a finding of not guilty by reason of insanity. Tex.Code Crim.Proc.Ann. art. 46.03 § 1(e). The underlying notion of the insanity defense is that it "excuses criminal responsibility." *Graham v. State,* 566

S.W.2d 941, 952–953 (Tex.Crim.App.1978).[1] Because insanity is an affirmative defense, we allow the attorneys to question the veniremembers during voir dire concerning their feelings about such a defense. Tex. Code Crim.Proc.Ann. art. 35.16(c)(2). Ironically, it was the trial court's failure to allow this questioning that resulted in the reversal of appellant's first conviction. *Robinson (sic), supra.*

To support his proposition, appellant directs our attention to a case before the Indiana Supreme Court, where the state had argued that an accused goes "scot free" if found "not guilty by reason of insanity." *Dipert v. State,* 259 Ind. 260, 286 N.E.2d 405 (1972).[2] The Indiana Supreme Court required an instruction be given informing the jurors of the effect of a finding of not guilty by reason of insanity. However, in this case the State never explicitly stated that the defendant would go free. Often the State confronts the premise of the insanity defense, that is, a defendant is excused of the criminal responsibility for his actions and that the jurors responsibilities end at that point. Appellant contends these statements insinuate that the defendant will go free. But appellant's argument goes both ways. The fact there is a finding of not guilty by reason of insanity and a finding of not guilty would also indicate that the results are different in some manner, that you would go free with an acquittal but possibly not with a finding of not guilty by reason of insanity. For whatever reasons, the legislature has determined the jury will not be informed of the differences between these two findings.[3]

Because the State in this case did not erroneously indicate appellant would be re-

leased into society, appellant's first point of error is overruled.

■ In appellant's second point of error, he argues the State "opened the door" concerning the effect of a finding of not guilty by reason of insanity. During the State's examination of Dr. Griffith, he commented that occasionally individuals feigned insanity, and "if they can play crazy and convince somebody of this, at least temporarily, they are sidetracked from the legal system into the mental health system." In cross-examination of the doctor, defense counsel attempted to question the witness on the effect of a not guilty by reason of insanity. The court sustained the State's objection. Appellant argues, similar to his first argument, that under the Rule of Optional Completeness when the State opened the door he should be able to cross-examine the mental health professional on the effect of a finding of not guilty by reason of insanity. *See* Tex.Crim. Rule Evid. 107. The Rule of optional completeness applies to parts of an "act, declaration, conversation, writing or recorded statement..," none of which are applicable in this instance. Nor do we believe the State's witness "indicated the accused would be released into society" thus necessitating an instruction by the trial judge. *Supra.* Appellant's second point of error is overruled.

■ Finally, appellant complains that failure to instruct the jury on the consequences of a finding of not guilty by reason of insanity violates his constitutional right to due course of law and due process under article 1, section 19 of the Texas Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. Appellant's basis for this argument is premised upon other jurisdictions. We will address these deci-

---

1. Where a potential juror was unable to accept the defense of insanity, that veniremember would be strikable for cause by appellant under article 35.16(c)(2), *infra.*

2. We note the Indiana Supreme Court was careful to limit their decision to the facts of the *Dipert* case. In Indiana, like Texas, the defendant was not entitled to an instruction as to what post-trial procedures were available to determine whether he would be released or subject to confinement. However, a defendant is entitled to a curative instruction or statement by a judge "where an erroneous view of the law on this subject has

been planted in their minds." 286 N.E.2d at 407.

3. We do not reach the question of situations where the State indicates that a defendant would be released into society upon a finding of not guilty by reason of insanity. At that point the trial court would possibly be permitted to declare a mistrial or instruct the jury that the State is incorrect as to the law of insanity, but the law precludes any discussion of the consequences of a finding of not guilty by reason of insanity.

sions, however, as none of those jurisdictions relied on a constitutional rationale, we decline to reach appellant's constitutional challenge. Appellant acknowledges this argument is identical to the defendant in *Zwack v. State*, 757 S.W.2d 66, 69 (Tex.App.—Houston [14th Dist.] 1988, no pet.).[4]

Appellant urges this Court to adopt the so-called *"Lyles* rule." *Lyles v. United States*, 254 F.2d 725 (U.S.App.D.C., 1957) (joint opinion by Prettyman and Burger, JJ.), *cert. denied*, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958); *accord State v. Hamilton*, 216 Kan. 559, 534 P.2d 226 (1975); *Roberts v. State*, 335 So.2d 285 (Fl.1976). In *Lyles*, the D.C. Circuit Court of Appeals held that where a defense of insanity is raised the trial court shall instruct the jury as to the legal meaning of a verdict of not guilty by reason of insanity, unless it is affirmatively shown on the record that the defendant does not desire such an instruction. 254 F.2d at 728–729. The prior practice for not instructing the jury was based upon the well established doctrine that the jury has no concern with the consequences of a verdict. 254 F.2d at 728. In departing from the established practice, the D.C. Circuit Court of Appeals believed this was not true in the case of the insanity defense.

The rationale for providing such an instruction is persuasive, that is, such an instruction prevents confusion by jurors and prevents jurors from finding an individual guilty where the clear weight of the evidence indicates the defendant was insane at the time of the commission of the offense. However, we fail to see where the policy decisions of our sister courts throughout the union are ever raised to the level of a due process right or a due course of law right. We agree with the Fourteenth Court of Appeals' opinion in *Zwack, supra*, and the State that such a policy decision should be left to the Legislature where they have spoken on such matters. Accordingly, appellant's third point of error is overruled.

## II.

Appellant's fourth through eighth points of error and his eleventh point of error concern the trial court's decision to refuse or grant one party's challenge for cause. In his fourth and fifth points of error, appellant argues the trial court erred in refusing his challenges for cause based on a venireperson's bias or prejudice against the law. Tex. Code Crim.Proc.Ann. art. 35.16(c)(2). In his sixth, seventh and eighth points of error, he argues the trial court erred in granting the State's challenges for cause based on the venirepersons' opinion as to the defendant's guilt or innocence. Tex.Code Crim.Proc. Ann. art. 35.16(a)(10). The eleventh point of error concerns whether the state improperly "educated" a prospective juror on how to avoid an article 35.16(a)(10), *supra*, disqualification.

■ This Court will not disturb a trial court's ruling on a challenge for cause absent an abuse of discretion. *Adanandus v. State*, 866 S.W.2d 210, 222 (Tex.Crim.App.1993). We have consistently deferred to the trial court's ruling on these matters, as the judge

---

4. Appellant directs our attention to the practice of other jurisdictions. None of these jurisdictions, however discuss this instruction in terms of a constitutional right.

  Several jurisdiction require, upon request, that an accused relying on the insanity defense is entitled to an instruction on the commitment procedures. *Kuk v. State*, 80 Nev. 291, 392 P.2d 630, 634 (1964) ("We think that the jury should know the consequences of such a verdict."); *People v. Cole*, 382 Mich. 695, 172 N.W.2d 354, 366 (1969) ("This appeal makes it mandatory that this Court choose between . . ."); *Schade v. State*, 512 P.2d 907, 918 (Alaska 1973) (Following *Cole*, Alaska Supreme Court viewed problem of requisite instruction as a "judicial choice."); *Commonwealth v. Mutina*, 366 Mass. 810, 323 N.E.2d 294 (1975) ("On balance then, we believe it is best to entrust jurors with a knowledge of the consequences of a verdict of not guilty by reason of insanity."); *State v. Hammonds*, 224 S.E.2d 595, 290 N.C. 1 (1976) (Policy decision of court, not based on any constitutional rationale.).

  Other jurisdictions require an instruction on commitment procedures whenever an accused presents the insanity defense, unless he affirmatively shows that he does not want an instruction. *Lyles v. United States*, 254 F.2d 725 (U.S.App.D.C.1957), *cert. denied*, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958); *State v. Hamilton*, 216 Kan. 559, 534 P.2d 226 (1975) (Legislature explicitly stated court *shall* instruct on the substance of the section which provides for commitment procedures.); *Roberts v. State*, 335 So.2d 285 (Fl.1976).

is in the best position to see and hear the veniremembers. *McCoy v. State,* 713 S.W.2d 940, 945 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

▪ Appellant's sixth, seventh and eighth points of error concern the trial court's alleged error in sustaining the State's challenge for cause based on venireperson Tadlock.[5] When Tadlock was asked by the State whether she had heard anything about the case, she responded she only knew what she had read in the paper. The State then asked, "[from] hearing that, have you formed any opinion or conclusion as to the guilt of this man, either his guilty (sic) or innocence?" She responded "no, not really." When the State asked her what she meant by "not really," she stated "I think he could be guilty." The State then informed her of the presumption of innocence, and asked her whether she could presume he was innocent. She was uncertain. When asked again whether it would affect her service as a juror, Tadlock responded,

> Well, from, you know, what I heard is I heard everything about the other murders, you know, the ones next door and everything. So I just think that that, to me, makes him seem more guilty ... You know, not just the fact that he killed the first man, but the other ones he killed.[6]

The State again asked whether these feelings would affect her judgment in reaching a verdict, and she thought they would. The State challenged Tadlock for cause based on Article 35.16(a)(10).[7] At this point the following took place between the venireperson and the trial court:

> TRIAL COURT: You do feel like that this opinion then, that you have, from what you've heard about this case, would in some way influence your verdict; is that correct?
>
> MS. TADLOCK: Well, I think so, not just the one murder, but like I said, the additional. I mean, you can't erase that from your mind, what you've heard from other people.

The trial court then granted the State's motion.

Appellant now argues that the trial court erred because he failed to obtain an unambiguous answer that Tadlock had such an opinion, because he failed to clearly determine that Tadlock's opinion would influence her verdict, and lastly because he failed to allow appellant to question her regarding her opinion. As previously stated, we will not reverse the ruling of the trial court on a challenge of cause unless there is a clear abuse of discretion. *Adanandus, supra.*

In this instance, appellant has not shown an abuse of discretion. When we examine

---

5. The three points of error deal with whether the trial court erred by not obtaining an unambiguous answer to the venireperson's opinion, whether the trial court erred in not determining whether that opinion would clearly influence her verdict, and whether the trial court erred in not allowing defense questioning on the subject, respectively.

6. While appellant was convicted of capital murder for killing Gardner, it should be noted that the evidence indicated appellant first murdered his roommate, proceeded next door where he killed Gardner and three other individuals.

7. Article 35.16(a)(10) of the Texas Code of Criminal Procedure provides:

   (a) ... A challenge for cause may be made by either the state or the defense for any one of the following reasons:

   \*   \*   \*   \*   \*   \*

   (10) That from hearsay, or otherwise, there is established in the mind of the juror such a

conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict. To ascertain whether this cause of challenge exists, the juror shall first be asked whether, in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative, he shall be discharged without further interrogation by either party or the court. If he answers in the negative, he shall be further examined as to how his conclusion was formed, and the extent to which it will affect his action; and, if it appears to have been formed from reading newspaper accounts, communications, statements or reports or mere rumor or hearsay, and if the juror states that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case. If the court, in its discretion, is not satisfied that he is impartial, the juror shall be discharged ...

the entire voir dire, the record supports the trial court's finding that Tadlock's knowledge of the case will affect her opinion of the guilt or innocence of appellant. Article 35.16(a)(10) provides that, "[if] the court, in its discretion, is not satisfied that [she] is impartial, the juror *shall* be discharged." (Emphasis added). Nothing in the statute requires the trial court to ask questions in a certain manner. The statute leaves the determination of impartiality to the discretion of the trial court, and contrary to appellant's complaint, it does not provide appellant an opportunity to question the venireperson *after* the court has made that determination. *Gardner v. State,* 733 S.W.2d 195, 209 (Tex. Crim.App.1987), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 848, 102 L.Ed.2d 979 (1989). Because appellant has not shown the trial court abused his discretion, his sixth, seventh and eighth points of error are overruled.

In the eleventh point of error, appellant complains the trial court erred in not requiring the State, on request by appellant, to qualify venireperson Turner on article 35.16(a)(10) without the State first educating the venireperson on how to avoid an article 35.16(a)(10) disqualification. When venireperson Turner stated he had heard about the case, the State asked a series of questions concerning the duties of jurors. After which venireperson Turner assured the State that he would consider the facts only put before him to decide appellant's guilt or innocence. Appellant makes no contention that Turner was not fit to serve on the jury, rather he complains of the order of questioning by the State, believing another result would accrue.

We disagree. Appellant's reasoning begs the question. If venireperson Turner was able to put aside what he had previously heard about appellant's case, then he had not conclusively established an opinion as to appellant's guilt. The voir dire process has not been established to prevent, based on challenges for cause, venirepersons from serving who have heard about a particular case. Article 35.16(a)(10) exists to prevent venirepersons from sitting who have made decisions about an individual's guilt or innocence. If at any point during the State's questioning it becomes apparent that the venireperson had

an opinion as to appellant's guilt, the trial court could excuse the venireperson for cause. That not being the case, appellant's eleventh point of error is overruled.

In his fourth and fifth points of error, appellant contends the trial court erred in overruling his challenge for cause alleging venirepersons Cloud and Kirkpatrick's bias and prejudice against the insanity defense. Article 35.16(c)(2), *supra,* provides that the defendant may challenge for cause any venireperson if that person "has a bias or prejudice against any of the law applicable to the case upon which the defendant is entitled to rely ..."

To present reversible error in the trial court's erroneous denial of a challenge for cause, the appellant must show (1) he exhausted all of his peremptory challenges, (2) the trial court denied his request for additional peremptory challenges, and (3) a venireperson upon whom he would have exercised a peremptory challenge was seated on the jury. *Adanandus,* 866 S.W.2d at 220; *Hughes v. State,* 878 S.W.2d 142, 151 (Tex. Crim.App.1993) (opinion on State's Motion for Rehearing). Appellant has properly preserved error.

However, appellant is unable to illustrate harm in this instance. The record demonstrates the trial court granted two additional peremptory strikes during voir dire to appellant. To show harm for a trial court's erroneous denial of a strike for cause, appellant must show three jurors were improperly struck. *Hughes,* at 151–152. As all other appellant's contentions for challenges for cause have been overruled and appellant is unable to show harm, we need not reach the merits of appellant's challenges to Cloud and Kirkpatrick. Appellant's fourth and fifth points of error are overruled.

### III.

In appellant's ninth and tenth points of error, he contends the trial court, in response to a request by the jury, provided a transcription of certain testimony in violation of Article 36.28 of the Texas Code of Criminal

Procedure. Article 36.28 provides, in pertinent part,

> In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other; . . .

In appellant's ninth point of error, he essentially argues the jury never certified to the trial court that they were in disagreement on specific testimony. After the jury retired for deliberation at the guilt stage of the trial, several notes were relayed between the jury and the trial court. Initially the jury requested the following:

> 1) Documentation that would give time of death for each victim.
>
> 2) Evidence or transcript containing the findings of the Chief of Psychiatry at TCOM [Texas College of Osteopathic Medicine].

The trial court responded:

> In response to your request, you are instructed that the law provides that if the Jury disagrees as to the testimony of any witness, they may, upon application to the Court, have read to them from the Court Reporter's notes that part of a witness' testimony on the particular point in dispute and *no other.*
>
> Therefore, you are instructed if you desire to have any testimony, to notify the Court in writing of the particular part or parts of any witness' testimony which is in dispute and which you desire.

[Emphasis in original]. Twenty minutes later the jury sent another note to the trial court,

> We respectfully request *all written* documents that were submitted into evidence be brought to us.

[Emphasis in original]. The trial court responded,

> You have all the written documents that were submitted into evidence other than the three documents attached to this answer.
>
> If you are referring to oral testimony concerning a particular witness' testimony,

you are instructed that you must be specific about the oral testimony you want reproduced for you and which is in dispute.

Again the jury foreman responded,

> Request transcript of Hatcher's [the prosecutor's] cross-examination of Dr. Price, in which Hatcher read excerpts from, the report of the Chief of Psychiatry at TCOM.

At this point the transcription requested by the jury was sent by the trial court.

Where the jury requests evidence during deliberations, the trial court must determine whether that request is in compliance with article 36.28 of the Texas Code of Criminal Procedure. *Iness v. State,* 606 S.W.2d 306, 314 (Tex.Crim.App.1980). There are two competing concerns in answering questions for juries while they deliberate. On the one hand, we are concerned that the trial court not comment on the evidence. *See Pugh v. State,* 376 S.W.2d 760 (Tex.Crim.App.1964) (jury requested date and time of incident, and trial court ordered all of the arresting officer's testimony be read). However, we also desire to provide the jury with the means to resolve any factual disputes the jury members may have. *See Jones v. State,* 706 S.W.2d 664 (Tex.Crim.App.1986) (trial court read too little to the jury in response to its question).

■ Under Art. 36.28 the jury must disagree as to the statement of any witness before the testimony may be read back. The manner in which the trial court determines whether there is a factual dispute between the jurors is left to his sound discretion. *See Jones,* 706 S.W.2d at 668; *Thrash v. State,* 482 S.W.2d 213 (Tex.Crim.App.1972); *Flores v. State,* 827 S.W.2d 529 (Tex.App.—Austin 1992, no pet.). However, as stated by this Court in *Moore v. State,* 874 S.W.2d 671 (Tex.Crim.App.1994):

> A simple request for testimony does not, by itself, reflect disagreement, implicit or express, and is not a proper request under Art. 36.28.

In *Moore,* the jury sent out a note requesting the testimony of three witnesses regarding a particular topic. Although the appellant in *Moore* properly requested that the trial court

inform the jurors they must certify there was a dispute as to that particular portion of the testimony the trial court refused to inform the jury that such testimony could only be read back in the case of a disagreement, denied the appellant's request and then ordered the court reporter read the portions of the requested testimony to the jury. *Id.* The trial court made no affirmative effort to determine if there was a dispute about the requested testimony, let alone what the dispute may be. This Court therefore concluded that, "[t]he trial court abused its discretion in reading the testimony without determining if a disagreement existed." *Id.*

The *instant case is distinguishable* from *Moore* in several respects. Here, there were three separate requests made by the jury in determining whether a dispute existed, each becoming increasingly narrow in scope. Additionally, the trial court clearly informed the jury that testimony would be read back only in the event of a dispute after each request for information. By considering the last note requesting the testimony in conjunction with prior notes from the jury and the corresponding instructions from the trial court, it was not unreasonable to infer a disagreement among the jury regarding Dr. Price's testimony. The trial court was properly cautious in observing the competing concerns of article 36.28 of the Texas Code of Criminal Procedure. We therefore hold the trial court, in this instance, did not abuse his discretion in permitting certain testimony be given to the jurors.

In the tenth point of error, appellant complains the trial court erred by not providing more information to the jury. We disagree. From the series of notes exchanged between the trial court and the jury, it is reasonable to believe there was a dispute as to the testimony of Dr. Price during the state's cross-examination. Where the jury indicates a specific and limited portion of testimony to be read, the trial court does not abuse his discretion by only providing the requested information. *See Jones, supra.*

Appellant's ninth and tenth points of error are overruled.

## IV.

In the twelfth point of error, appellant complains the word "probability" contained in article 37.071(b)(2) unconstitutionally decreases the State's burden of proof. The second special issue asks the jury "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex.Code Crim.Proc.Ann. art. 37.071(b)(2). The jury was also instructed that "the state must prove each issue submitted beyond a reasonable doubt and the jury shall return a special verdict of 'yes' or 'no' on each issue submitted."

Appellant argues that the term "probability" could mean one in a hundred. As an analogy, he alludes to a horse race, where a horse with such odds will be wagered on, there being a "probability" the horse could win. However, appellant's analogy fails to recognize the reason the bettor wages is based much on the potential payout of a win when compared with the "chance" the horse will win. It is "probable" the horse will not win, however, because of the odds it is worth the gamble.

While no statutory definition exists for the term "probability," *Black's Law Dictionary*, defines the term as the "likelihood of a proposition or hypothesis being true, from its conformity to reason or experience, or from superior evidence or argument adduced in its favor." abridged 5th Ed. 627. *See Hughes v. State*, 878 S.W.2d 142, 147–148 (Tex.Crim. App.1992) (opinion on original submission); *Cuevas v. State*, 742 S.W.2d 331, 347 (Tex. Crim.App.1987). The State must prove beyond a reasonable doubt that there is a probability, or that the evidence indicates it is more likely than not, appellant represents a continuing threat to society. This does not unconstitutionally lower appellant's burden of proof. *Kemp v. State*, 846 S.W.2d 289, 308– 09 (Tex.Crim.App.1992); *Jones v. State*, 843 S.W.2d 487, 496–97 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1858,

123 L.Ed.2d 479 (1993). Appellant's twelfth point of error is overruled.

## V.

■ In the thirteenth point of error, appellant complains the trial court erred in allowing the State to inform the venirepersons that as jurors they would be required to take an oath that the mandatory penalty of death or life would not affect their deliberations on any issue or fact. *See* Tex. Penal Code Ann. § 12.31(b). Initially, we note that *no* veniremembers were struck for cause under section 12.31(b) of the Texas Penal Code,[8] in violation of the Supreme Court's decision in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). Appellant complains on appeal it was error to allow the State to announce to the veniremembers that if seated as a juror they would be required to take the 12.31(b), *supra,* oath, and if they could not do so in good conscience, they were not qualified to serve. However this oath was never given by the trial court. When the trial court attempted to give such an oath, the defense objected. The trial court sustained the objection, and administered the oath provided for in article 35.22 of the Code of Criminal Procedure.

We have addressed this argument where the court administered the oath under section 12.31(b), *supra,* in *White v. State,* 610 S.W.2d 504, 509 (Tex.Crim.App.1981) and *Gardner v. State,* 733 S.W.2d at 205. We believe these cases control the issue presented, and therefore, we overrule appellant's thirteenth point of error.

Appellant's fourteenth and fifteenth points of error involve the trial court's refusal to define the term "deliberately" at the start of voir dire and in the jury instruction. We have seen this argument on numerous occasions and have consistently overruled it. *Lewis v. State,* 815 S.W.2d 560, 563 (Tex. Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992), and

cases cited therein. The fourteenth and fifteenth points of error are overruled.

■ In points of error sixteen through nineteen, appellant complains the trial court erred by restricting the voir dire of veniremembers Crowley, Stearns, Formagus and Key regarding the term "deliberately."[9] Appellant was not prevented from inquiring about the difference between "intentional" and "deliberate." Nor was counsel prevented from asking what "thought processes" a potential juror would use in giving the term "deliberately" meaning. The voir dire of veniremember Crowley is representative of the questioning by counsel:

DEFENSE ATTORNEY: All right. Now, just a word or two about some of the terms that are used in these questions. Can you read those? Do you have those questions in front of you still?

CROWLEY: Yes.

DEFENSE ATTORNEY: Okay. Now, the first question you're asked to decide is: Whether the conduct of the Defendant in the killing of the deceased was committed deliberately. And for once, [the State's attorney] and I agree about something, that whatever the term means, it doesn't mean the same thing as the earlier finding.

Understand, before you'd ever been asked to answer this question, you would have already found the individual acted intentionally and intended the result of his conduct.

Now you're asked to determine whether or not he acted deliberately. Do you see what I'm saying?

CROWLEY: Yes, I think I do. I think we went through this awhile ago.

DEFENSE ATTORNEY: In other words, whatever deliberately means, it doesn't mean the same thing as the word intentional or they would have used the word

---

8. Section 12.31(b) of the Texas Penal Code provides,

Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or impris-

onment for life will not affect his deliberation on any issue of fact.

9. We note appellant quotes the voir dire of Beam as well in his argument. As there is no point of error concerning veniremember Beam, we refrain from addressing his voir dire.

intentional in the statutory scheme. It must mean something different.

Now can you tell me, in your own mind, if you can draw a distinction between those two terms?

CROWLEY: Yes, I think I can. They don't mean the same thing.

DEFENSE ATTORNEY: All right. What, if anything, would you say would be the difference in their meaning?

STATE'S ATTORNEY: Your Honor, we're going to object under the Milton case [*Milton v. State*, 599 S.W.2d 824 (Tex. Crim.App.1980)], to his asking the prospective juror to define a word that's not defined under the law, Charles Milton.[10]

THE COURT: I will allow the juror to answer the question. Go ahead, sir, if you can answer.

CROWLEY: Well, my consideration of deliberated is in the terms that we're using here?

DEFENSE ATTORNEY: Yes, sir.

CROWLEY: And this is to understand that assuming that it has already been found intentional, committed the crime intentionally.

Then deliberate, without thought of welfare or consideration of anyone else, did something deliberately.

DEFENSE ATTORNEY: All right.

CROWLEY: And that's just my personal. . . .

DEFENSE ATTORNEY: That's what we're interested in. That's exactly what we need to know?

CROWLEY: But it all bases back to the evidence that would be presented.

DEFENSE ATTORNEY: Yes, sir absolutely.

But I need to know what distinction, if any you can draw in you own mind between the two terms.

Do you see what I mean? Because the Judge is not going to give you a definition of the term deliberately, the adverb delib-

erately. You're going to be left, you and the other jurors are going to be left to formulate a meaning for that term that is your own.

Let me just suggest something to you then: You're going to be asked to deliberate this case, and that term—

STATE'S ATTORNEY: Your Honor, we're going to object to him attempting to provide the juror with a definition of a word not defined in the law.

COURT: Let him finish his question.

DEFENSE ATTORNEY: You're going to be asked to deliberate your verdict.

CROWLEY: Right.

DEFENSE ATTORNEY: Okay. Does that—does the use of that term in that context, assuming they're derived from the same basic words and meanings, does that assist you in providing some meaning to the word deliberately?

CROWLEY: A different meaning.

STATE'S ATTORNEY: We would renew our objection, Your Honor, to attempting to provide a definition to a word not defined in the law.

THE COURT: I'll sustain the objection to that question.

DEFENSE ATTORNEY: All right. Let's move on to another term, Mr. Crowley.

There is nothing incorrect with a defense attorney's questioning concerning a veniremember's definition of "deliberately." If each attorney were permitted to question a potential juror on the definitions of terms used in the contemplated charge, the voir dire could last an unreasonable length of time. In order to curb abuses and the length of the voir dire, we have left the limits on these questions to the sound discretion of the trial judge. *Woolridge v. State*, 827 S.W.2d 900, 905–06 (Tex.Crim.App.1992); *Trevino v. State*, 815 S.W.2d 592, 608–10 (Tex.Crim.App. 1991), *rev'd on other grounds*, —— U.S. ——, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992); *Gu-*

---

**10.** Initially, we must address the State's argument that *Milton v. State, supra,* stands for the proposition that defense counsel may not inquire as to a veniremember's definition of "deliberately." This is an incorrect reading of our prece-

dent. *Milton* stands for the proposition that it is not an abuse of discretion for a trial court to limit questioning on the subject of definitions of a word. 599 S.W.2d at 826.

erra v. State, 771 S.W.2d 453, 471–72 (Tex. Crim.App.1988), cert. denied, 492 U.S. 938, 110 S.Ct. 25, 106 L.Ed.2d 637 (1989); Milton, 599 S.W.2d at 826. Appellant's trial counsel was permitted to ask each veniremember what his or her definition of "deliberately" was as well as whether he or she recognized a difference between that term and the term "intentional."

When we view the entire voir dire of each of the prospective jurors, it appears the trial court sustained the State's objection when appellant's trial counsel attempted to define the term for the prospective jurors. While appellant's counsel was permitted to hypothetically indicate potential definitions of terms in the contemplated charge, we hold the trial judge in this case did not abuse his discretion in limiting voir dire as appellant's proffered question was repetitious. Appellant was permitted to extensively question the veniremembers concerning the term "deliberately." See Woolridge, 827 S.W.2d at 906; Lane v. State, 828 S.W.2d 764, 766 (Tex.Crim.App.1992). Accordingly, appellant's sixteenth through nineteenth points of error are overruled.

In his twentieth point of error appellant complains article 37.071(b) is unconstitutional because the term "probability" in the second special issue is vague and indefinite.[11] Appellant requests we revisit our precedent contrary to his position because this issue continues to be raised by defendants. Accordingly we adhere to our precedents that the term "probability" is not vague or indefinite such that it is unconstitutional. Lewis, 815 S.W.2d at 562–563, and cases cited therein.

## VI.

█ In appellant's twenty-first point of error, he complains the trial court erred in refusing to grant a retroactive peremptory strike. When appellant filed his brief, this

Court had not addressed the issue presented. However, recently in Earhart v. State, 823 S.W.2d 607 (Tex.Crim.App.1991), we stated;

> This Court has held that the trial court has wide discretion over the voir dire process. Bridge v. State, 726 S.W.2d 558, 564 (Tex.Crim.App.1986). Article 35.13, Tex.Code Crim.Proc.Ann., provides that once a veniremember in a capital case is qualified, the veniremember "shall be passed for acceptance or challenge first to the state then to the defendant for either peremptory challenges or challenges for cause." The trial court followed this procedure, and cannot be held in error for failing to provide out-of-time peremptory challenges.

823 S.W.2d at 623. Appellant's twenty-first point of error is overruled.

## VII.

█ In the twenty-second and twenty-third points of error, appellant argues the trial court erred in admitting the pistol and other items taken from appellant at the time he was illegally arrested and in allowing a psychiatrist to testify for the State based on a confession which had been previously determined to have been illegally obtained from appellant. We refuse to reach the merits of appellant's argument, because he has not properly preserved error. Tex.R.Crim.Ev. 103(a)(1).

In the original trial, error was preserved and properly presented on appeal. However, the merits of appellant's claims were not reached by this Court. Robinson (sic), supra. Subsequently in his second trial, appellant did not object at any time to the allegedly improperly admitted evidence. There was no pre-trial motion to suppress nor any objection to the admission of the evidence during any phase of the second trial. To preserve error on this appeal, appellant presents a novel argument.

11. Article 37.071 of the Texas Code of Criminal Procedure provides in part:
(b) On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:
\* \* \* \* \* \*
(2) whether there is a probability that the defendant would commit criminal acts of vio-

lence that would constitute a continuing threat to society . . .

Appellant argues that because the issue was raised at a pre-trial hearing in the first trial, and error was preserved in the first trial, he is not required to preserve error in the second trial. Appellant's argument is based on the "law of the case" doctrine. Citing *Granviel v. State*, 723 S.W.2d 141, 147 (Tex.Crim.App.1986), *cert. denied*, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987), and *Bass v. State*, 626 S.W.2d 769, 774–75 (Tex. Crim.App.1982) (panel opinion), appellant argues that "absent a claim of new evidence or other circumstances, and as long as an adequate hearing has been held before a fact-finder, determinations of questions of law should be held to govern the case throughout all of its subsequent stages, including retrial." And because a defendant need not renew at trial his previously made and rejected objections, he need not object at a second subsequent trial.[12] We believe appellant misreads our applicable precedents.

In *Granviel*, this Court explained the "law of the case" doctrine. We noted that "where determinations as to questions of law have already been made on a *prior appeal to a court of last resort*, those determinations will be held to govern the case throughout all of its subsequent stages, including a retrial and a subsequent appeal." 723 S.W.2d at 147 (emphasis added); *Ex parte Calvin*, 689 S.W.2d 460 (Tex.Crim.App.1985). *Granviel* is inapplicable where there is no determination by a "court of last resort," concerning a question of law.

In *Bass*, the appellant complained that at the retrial the second judge erred in not holding a second *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing to determine the voluntariness of a confession. In that case we *narrowly* held that a trial court "may make his determination [of voluntariness of the confession] based upon evidence presented at the earlier hearing [, prior to the first trial,] and *may adopt* the findings and conclusions of the fact-finder at the earlier hearing." *Bass*, 626 S.W.2d at 774–75. In *Bass* the defendant filed a motion to suppress in the second trial and objected to the admission of the confession during the second trial. 626 S.W.2d at 771. The trial court's ruling on the motion preserved error for an appellate claim in the second trial. However, in this instance, no motion was filed and no objection was lodged.

However, contrary to appellant's claims, we did not hold in either case that an objection and a trial ruling in one trial preserves error in a second retrial under some notion of the "law of the case." To so hold would force appellate court's to review the propriety of a trial court's rulings in both trials. Accordingly, appellant's twenty-second and third points of error are overruled.

## VIII.

■■■■ In his twenty-fourth and final point of error, appellant argues the sentence of death is unconstitutional because it is based on article 37.071 of the Texas Code of Criminal Procedure which fails to provide a mechanism by which jurors could give recognition to the balance between the aggravating and mitigating factors involved in this case.[13] Specifically, appellant complains the jurors were not able to consider the mitigating effect of his mental disease or defect during the punishment phase of the trial, and therefore the Texas punishment scheme violates the Eighth Amendment's prohibition

---

12. During the 1983 trial, appellant objected to the introduction of the handgun as well as the wallets of the victims found by the police when he was arrested in Kansas. The basis of this objection was premised on the legality of the arrest. Appellant's objections were overruled in the 1983 trial.

Appellant also filed a motion to suppress an illegally obtained confession in a 1983 pre-trial hearing. This motion was granted by the trial court. The confession was not admitted in either the 1983 or the 1987 trial. However, appellant complains such confession came in the back door in the 1987 trial during the testimony of Dr.

Griffith when he testified as to the sanity of appellant at the time of the offense. This testimony was objected to during the 1983 trial but not the 1987 trial.

13. Appellant's second trial occurred prior to *Penry, infra*. Therefore no request for an instruction was necessary and error need not be properly preserved. *Black v. State*, 816 S.W.2d 350, 368–374 (Tex.Crim.App.1991) (Per Campbell, J., concurring with five judges joining). We note that prior to submission of appellant's appeal, *Penry* was decided and that is the basis of his complaint.

against cruel and unusual punishment. U.S.C.A. Eighth and Fourteenth Amendments. The jury rejected appellant's insanity defense during the guilt phase of the trial. However, appellant argues that irrespective of the jury's belief that he was not legally insane, they may have believed that a person who is mentally ill may be less morally culpable for his actions than other individuals. Therefore, appellant argues that the inability of the Texas system to provide a vehicle for these jurors to take into account such mitigating evidence causes our scheme to be unconstitutional as applied to appellant. *See Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

Since the Supreme Court's decision in *Penry v. Lynaugh, supra,* this Court has been confronted with numerous appeals contesting the constitutionality of the Texas punishment scheme. In 1976 the Supreme Court upheld the Texas system as constitutional. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). In a series of decisions after *Jurek* continuing until last term, the Supreme Court has decided cases which have borne significantly on the continued constitutionality of our punishment scheme here in Texas. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion); *Penry v. Lynaugh, supra; Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990); *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990); *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Graham v. Collins,* 506 U.S. ——, 113 S.Ct. 892, 122 L.Ed.2d 260 (1992). In seventeen years the Supreme Court has specifically considered the Texas punishment scheme in five cases, beginning with *Jurek* and concluding last term with *Johnson v. Texas,* —— U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993).

Following the commands of *Furman v. Georgia,* the Texas Legislature adopted a sentencing scheme that narrowed the group of offenders subject to capital punishment. Tex.Penal Code Ann. § 19.03. This met the approval of the Supreme Court in *Jurek.* 428 U.S. at 270–271, 96 S.Ct. at 2955–2956. Additionally the Supreme Court held the Texas scheme satisfied the commands of the Eight and Fourteenth Amendments by permitting the jurors to consider particularized mitigating factors. *Id.,* at 272, 96 S.Ct. at 2956–2957; *Johnson,* —— U.S. at ——, 113 S.Ct. at 2666. "By authorizing the defense to bring before the jury at the separate sentencing hearing whatever mitigating circumstances relating to the individual defendant can be adduced, Texas has ensured that the sentencing jury [has] adequate guidance to enable it to perform its sentencing function." *Jurek,* 428 U.S. at 276, 96 S.Ct. at 2958; *Johnson,* —— U.S. at ——, 113 S.Ct. at 2667. Our Texas courts have historically allowed defendants to present to a jury whatever evidence is believed to be pertinent to the jury's decision during punishment. *See e.g., Roney v. State,* 632 S.W.2d 598 (Tex. Crim.App.1982).

After *Jurek,* the Supreme Court opinions turn towards certain specific mitigating factors. Each opinion questions whether specific mitigating evidence can be taken into account with our special issues. The first opinion on the subject following *Jurek* was *Franklin v. Lynaugh, supra.* In reaffirming the constitutionality of the Texas system a plurality of the Supreme Court held our special issues permitted the jury to properly consider the mitigating effect of a defendant's good prison record. *Franklin,* 487 U.S. at 182, 108 S.Ct. at 2331–2332.

In 1989, the Supreme Court decided *Penry, supra.* Penry's particular mitigating factors included mental retardation and child abuse, specifically Penry's inability to learn from his mistakes. *Id.,* 492 U.S. at 322–324, 109 S.Ct. at 2949. The Supreme Court held that appellant's mitigating evidence was only aggravating in the limited context of our second special issue, and therefore the punishment scheme was unconstitutional as ap-

plied to Penry. *Ibid.; Johnson,* —— U.S. at ——, 113 S.Ct. at 2667.

In *Graham* the Supreme Court was presented with evidence of Graham's family background, positive character traits, and his youth. *Graham v. Collins* was a collateral attack under federal law, thus for Graham to succeed, he had to show that what he was requesting was not a "new rule" within the confines of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). This the Supreme Court rejected. *Graham,* 506 U.S. ——, 113 S.Ct. at 902. In construing Graham's claim the Court noted that they "[did] not read *Penry* as effecting a sea change in this Court's view of the constitutionality of the former Texas death penalty statute; it does *not* broadly suggest the invalidity of the special issue framework." *Id.,* 506 U.S. ——, 113 S.Ct. at 901.

The limited extent to which *Penry* applied was reaffirmed again in the fifth of these cases—*Johnson v. Texas,* —— U.S. at ——, 113 S.Ct. at 2668–2672. It is within the decision in *Johnson* that we begin to see a coherent rationale for what is and what is not considered *"Penry* evidence," thus necessitating a special instruction or special issue to make the Texas sentencing scheme constitutional. For an appellant to succeed on a claim that our death penalty scheme is unconstitutional as applied to him, with regards to *"Penry"* type evidence, an appellant must show first that he has presented at trial mitigating evidence and second that this evidence is placed beyond the effective reach of the sentencer. *See Penry,* 492 U.S. at 329, 109 S.Ct. at 2952; *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

> Recently in *Satterwhite v. State,* we noted, Whether or not the protections required by *Penry* have been adequately provided for depends upon the circumstances or each individual case. *Lewis v. State,* [*supra*]. Additionally, whether or not the protections of *Penry* are required at all depends on whether evidence was presented to the jury which was shown to have a tendency to reduce the moral culpability of the capital defendant in a way not exclusively related to the special issues.

858 S.W.2d 412, 426 (Tex.Crim.App.1993). The initial question of mitigation is difficult. We addressed this issue in *Lewis v. State:*

> Mitigating circumstances relevant to punishment within the meaning of the Eighth Amendment are those circumstances or "the defendant's background and character [which will support a] belief, long held by this society, that defendants who commit criminal acts that are attributable to [such circumstances] may be less culpable than defendant's who have no such excuse." *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (concurring opinion of O'Connor, J.).

815 S.W.2d 560, 567 (Tex.Crim.App.1991). Essentially, we have required evidence be presented by the defendant that tends to demonstrate that the defendant is less morally culpable for a crime than a similarly situated defendant without such evidence. It is the nature of this evidence which is crucial. At times this has been expressed in terms of "nexus," that is, for *Penry* error we have required "some nexus between [the accused's] . . . circumstance and the commission of the crime . . . indicative of a lessened moral blameworthiness." *Satterwhite,* 858 S.W.2d at 427, *quoting, Nobles v. State,* 843 S.W.2d 503 (Tex.Crim.App.1992). A showing of a "nexus" between the evidence and the crime would tend to support a finding of mitigation within the context of *Penry* because it tends to illustrate why one defendant may be less morally culpable for a crime when compared to a similarly situated defendant without such causation evidence.

Clearly we do not believe it is the labels society believes are mitigating. That is, it was not Penry's child abuse or mental retardation, *per se,* that was mitigating. Rather it is the specifics of the evidence, *presented at trial,* and how that evidence affected the personal moral culpability of the defendant. In some instances this is clear from the evidence without any explanation. For example, in *Johnson* the Supreme Court explained why youth was mitigating. The Court noted that "the relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and

recklessness that may dominate in younger years can subside." *Id.,* —— U.S. at ——, 113 S.Ct. at 2669.

However, this is less clear in situations where the nature of the evidence is medical testimony evoked from an expert. In the case of *Penry,* it was not merely that he was "mentally retarded" and abused as a child. A psychiatrist testified that Penry was unable to learn from his mistakes that society viewed as mitigating. It is this testimony, and not the label of "mental retardation," that society believes is mitigating.

Appellant directs our attention to the evidence of four potentially mitigating factors— appellant's abusive early life, his mental illness, his drug problem, and the remorse shown by appellant. Initially we note that we have held on other occasions that the jury can take into consideration evidence of remorse and drug abuse within the special issues. *Ex parte Harris,* 825 S.W.2d 120, 121 (Tex.Crim.App.1991) (evidence of remorse is directly within the scope of the second special issue); *Ex parte Ellis,* 810 S.W.2d 208, 212 (Tex.Crim.App.1991) (evidence of drug problem and suicide attempt did not rise to the level of *Penry, infra,* evidence).

We will consider the evidence of abuse and mental illness together. The defensive strategy during trial was the plea of not guilty by reason of insanity. Several witnesses for the defense testified concerning symptoms attributable to schizophrenia. The defense also produced an expert witness, Dr. Randall Price, who examined appellant and testified concerning the mental illness. Appellant's great-grandfather, great uncle or aunt, and appellant's uncle were all clinically diagnosed as schizophrenics. The evidence at trial indicated there may be a hereditary link to the disease, in that a person with such a trait may have the potential to develop schizophrenic episodes.

In 1978 appellant was voluntarily admitted to several hospitals. In November of that year after a two-day period of ingesting excessive amounts of LSD, appellant phoned his mother requesting help. She checked appellant into Hugely Hospital in Fort Worth. He was voluntarily transferred from Hugely to John Peter Smith Hospital in Fort Worth and eventually to the VA hospital in Waco. There was evidence that appellant did not have a strong desire to stop using drugs and that he may have been using drugs on his leaves from the hospital.

Dr. Randall Price testified on behalf of appellant concerning his insanity defense and the nature of schizophrenia. Dr. Price testified that some research has shown that alcoholic or abusive parents, early childhood trauma including child abuse, and drug abuse could make the symptoms more severe. There was evidence that appellant was sexually abused by a step-brother.

Dr. Price also testified extensively concerning the nature of schizophrenia. Schizophrenia is a severe mental disease that involves disorganization in three areas of life— thinking, feeling, and acting. Dr. Price described a person with schizophrenia. "A person's behavior becomes very bizarre at times, they hear voices, they do what the voices say, they talk back to the voices, they think the television is talking to them, they talk back to the television, things that are bizarre to us." They also tend to be illogical in their feelings. Dr. Price also testified that certain drugs, including LSD and amphetamines, tend to cause a person to exhibit symptoms that appear schizophrenic.

The State, on the other hand, proceeded on a theory that the symptoms attributable to schizophrenia were actually the result of continued abuse of numerous street drugs. This theory was developed further by the State's expert, Dr. Griffith, who testified appellant was not mentally ill, but rather he was faking his mental condition. The State's evidence at trial indicated that appellant extensively used a variety of drugs, including marijuana, methamphetamines, amphetamines, tranquilizers, LSD, and PCP to name a few. There was no evidence that appellant was under the influence of drugs at the time he committed the offense.

The State's psychiatrist, Dr. Griffith, also testified that in his opinion, appellant's behavior was attributable to a drug psychosis which has similar symptoms to schizophrenia. According to Dr. Griffith, this was the one

common factor each time appellant was checked into a hospital. The State's witness believed that the reports from the hospitals in 1978 were the result of excessive drug use which would result in symptoms similar to schizophrenia. Dr. Griffith also testified that he disagreed with Dr. Price's testimony concerning the hereditary nature and exacerbating factors of schizophrenia.

The evidence at trial also indicated that schizophrenia was episodic. *See Diagnostic and Statistical Manual of Mental Disorders,* 3rd Ed. Revised p. 187 (1987). That is, the disease could manifest itself at certain times and then remit. Both Dr. Price and Dr. Griffith testified that schizophrenia was treatable.

This Court has yet to address, in a published opinion, whether the jury could "consider and give effect to the mitigating evidence" of appellant's schizophrenia in a constitutionally acceptable manner. *See Mines v. State,* 852 S.W.2d 941 (Tex.Crim.App.1992) (Jury could consider evidence of bipolar disorder, commonly referred to as manic-depression). We have considered schizophrenia in other contexts. *See Lucas v. State,* 791 S.W.2d 35, 62–63 (Tex.Crim.App.1989) (No failure to instruct jury on the voluntariness of confession where defendant was under the influence of Thorazine, an antipsychotic drug, when he confessed.).

Appellant concedes the jury did not believe he was insane at the time of the commission of the offense. Nevertheless, appellant argues the jury was still unable to consider the mitigating nature of his mental disease or defect. However, we note the evidence presented at trial is insufficient to raise a "Penry" issue. The testimony elicited from the mental health professional was that schizophrenia may affect as much as ten per cent of our society. The expert believed there was a biological link in these persons, and that many of these persons would never develop the characteristics of the disease. The expert further testified appellant's condition was episodic. And that during these episodes appellant was unaware that his actions were wrong. The jury did not agree. However, assuming *arguendo* that he was schizophrenic, there was no evidence that appel-

lant's mental disease decreases his personal moral culpability. Accordingly appellant's final point of error is overruled.

## IX.

■ We granted appellant's trial counsel permission to brief a point of error not raised by appellant's appellate counsel. In his unassigned point of error, appellant argues the trial court committed reversible error in failing to sustain appellant's objection to the prosecutor's direct comment on the defendant's failure to testify. The following remarks were made by the State during closing arguments:

STATE: You were able to hear more evidence concerning the commission of the offense itself. Judy Smith testified, a friend of Larry Keith Robison. Mr. Bays pointed out on his cross examination, 'You're still a friend of Larry Keith Robison. You're here just to tell what happened, aren't you?' And she said, 'Yes.'

And I asked her, 'What did Mr. Robison tell you was the reason that the child, Scott Reed, had to die?' He wasn't going to leave witnesses.

Why did he go next door to that house? He couldn't find the keys to Rick Bryant's car. If he had, he said he would have gotten away with it.

What about the murder of Georgia Reed? 'What did he tell you about her murder?' She begged for her life.

DEFENSE COUNSEL: Excuse me, Judge. The Defendant didn't tell anybody about anything. He should be quoting from the testimony of Judy Smith. And that's a violation of Article 38.08.

THE COURT: Overruled.

STATE: What did the Defendant tell you about Earline Barker?

DEFENSE COUNSEL: The same objection, Your Honor. It's a violation of Article 38.08. He's commenting on the Defendant's failure to testify by implying that he did testify.

THE COURT: Overruled.

STATE: He killed Earline Barker, as well. You heard the testimony, ladies and gentlemen.

There are times, ladies and gentlemen, when the outrage of our society and the righteous indignation of our society should be unleashed against the criminal element. I submit to you, this is one of those times.

Appellant cites article 38.08 of the Texas Code of Criminal Procedure,[14] Article I, Section 10 of the Texas Constitution, and *Myers v. State*, 573 S.W.2d 19 (1978) for the proposition that the prosecutor may not comment on a defendant's failure to testify during trial. However, this is not a case where the prosecution commented on the defendant's failure to testify. The prosecutor in this case commented upon evidence presented at trial where a witness, Judy Smith, testified as to what appellant told her. There is nothing in appellant's complaint that suggests the prosecutor mischaracterized the evidence, only that mentioning this evidence to the jury alludes to appellant's failure to testify. We refuse to read such implications in the prosecutors words. While we will not tolerate a prosecutor commenting on a defendant's failure to testify, we will also not prevent that same prosecutor from commenting on evidence properly before the jury. Accordingly, appellant's amicus curiae point of error is overruled.

As no other points of error are presented for our review, appellant's conviction and judgment are affirmed.

OVERSTREET, J., concurs in the result.

CLINTON and MALONEY, JJ, dissent.

BAIRD, J., not participating.

---

**14.** Article 38.08 provides:
 Any Defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any Defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.