

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,455

### EX PARTE ARTHUR LEE WILLIAMS, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 354897-A IN THE 208TH DISTRICT COURT
### FROM HARRIS COUNTY

COCHRAN, J., filed a concurring opinion in which HERVEY, J., joined.

## O P I N I O N

This case was tried almost thirty years ago. The law concerning the punishment issues

in a death penalty case was much different then.[1] The law concerning mitigation evidence

---

[1] In *Jurek v. Texas*, 428 U.S. 262 (1976), the United States Supreme Court upheld the constitutionality of the Texas capital-murder sentencing scheme based on its narrow definition of capital murder and its special issues of future dangerousness, deliberation, and lack of provocation. Until 1989, constitutional attacks upon the Texas statute based on the failure to have a special mitigation issue were rejected. *See, e.g, Demouchette v. State*, 731 S.W.2d 75, 80 (Tex. Crim. App. 1986) (rejecting defendant's argument that the special issues set out in the capital-murder sentencing statute "do not allow for the jury to consider or apply mitigating evidence in their deliberation" and do not "inform the jury how to apply the mitigating evidence in light of the aggravating language of the special issues."); *Fierro v. State*, 706 S.W.2d 310, 318 (Tex. Crim. App. 1986) (holding that the three statutory special issues were a sufficient basis for

was much different then.[2] And the law concerning defense counsel's constitutional duty to

investigate mitigating evidence was much different then.[3]

---

jury to consider defendant's mitigating evidence); *Stewart v. State*, 686 S.W.2d 118, 121 (Tex. Crim. App. 1984) (rejecting defendant's claim that art. 37.071 was unconstitutional because it did not contain a special mitigation issue; stating that jurors were not precluded from considering mitigation evidence under then-existing Texas special issues). It was not until 1989, in *Penry v. Lynaugh*, 492 U.S. 302, 323 (1989), that the Supreme Court held that the three special issues did not always suffice to allow a Texas sentencing jury to fully consider some types of mitigating evidence. This was six years after applicant's trial.

[2] Well into the 1990's this Court held that the jury could take "remorse"and good character into consideration through the "future dangerousness" special issue. *Robison v. State*, 888 S.W.2d 473, 488 (Tex. Crim. App. 1994); *Burls v. State*, 876 S.W.2d 877, 910 (Tex. Crim. App. 1994) (evidence of limited intelligence, good behavior as a child, past good deeds, and good behavior in prison may be addressed by the then-existing statutory special issues); *Ex parte Harris*, 825 S.W.2d 120, 121-22 (Tex. Crim. App. 1991) (mitigating evidence of circumstances surrounding murder and defendant's expression of remorse and cooperation with police, which suggested that defendant was not violent person, was directly within scope of second special issue); *Boyd v. State*, 811 S.W.2d 105, 109-12 (Tex. Crim. App. 1991) (rejecting defendant's ineffective assistance of counsel claim based on counsel's failure to request a special mitigation issue because evidence of defendant's remorse, good employment record, good character, helpfulness to others, and good relations was given full effect within the "future dangerousness" special issue).

[3] In *Burger v. Kemp*, 483 U.S. 776 (1987)–four years after applicant's trial–the Supreme Court held that counsel for a capital-murder defendant was not constitutionally ineffective for failing to further investigate or present potentially mitigating evidence of defendant's "exceptionally unhappy and unstable childhood." *Id.* at 788-96. As the Court explained, counsel could have reasonably decided "not to introduce the evidence out of apprehension that it would contribute little to his client's chances of obtaining a life sentence while revealing possibly damaging details about his past and allowing foreseeably devastating cross-examination." *Id.* at 790 n.7. The Court stated,

> The record at the habeas corpus hearing does suggest that [counsel] could well have made a more thorough investigation than he did. Nevertheless, in considering claims of ineffective assistance of counsel, "[w]e address not what is prudent or appropriate, but only what is constitutionally compelled." We have decided that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."

*Id.* at 794 (citations omitted). The Court concluded that counsel had a reasonable basis for not investigating the defendant's background further and for not offering any mitigating evidence. *Id.*

In *Strickland v. Washington*,[4] the Supreme Court emphasized the importance of judging trial counsel's decisions and conduct by the "prevailing professional norms" at the time that counsel had to make his decisions.[5] "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[6]

Here, the reasonableness of counsel's decisions not to request any special issue or instructions regarding mitigation evidence must be judged by the prevailing professional norms in a 1983 Texas capital murder trial. Applicant points to no Texas case or professional standard then in existence that an objectively reasonable defense lawyer would have requested an extra "mitigation" special issue or limiting instruction in the punishment phase of a capital murder trial. There was no such case or professional standard in 1983. A lawyer would reasonably consider the law on this issue settled. The notion of requiring a mitigation

---

at 795-96.

It was not until the Supreme Court decisions in *Williams v. Taylor*, 529 U.S. 362 (2000), and *Wiggins v. Smith*, 539 U.S. 510 (2003), that the Supreme Court made clear that counsel's constitutional duty required him to thoroughly investigate or explicitly articulate a reasonable strategy for declining to (1) investigate further or (2) present evidence that might have potential mitigating value.

[4] 466 U.S. 668 (1984).

[5] *Id.* at 688.

[6] *Id.* at 689.

instruction had been firmly rejected by this court in *Lackey v. State*[7] in 1982. Counsel cannot be found constitutionally deficient for declining to request a special mitigation instruction in this 1983 trial when this court had just finished rejecting such a request in a capital case.[8]

Not only was there no such thing as a "mitigation instruction" in 1983, there was precious little legal development of "mitigation evidence" at that time.  As applicant's trial counsel forthrightly noted in his affidavit,[9] when he was appointed to represent applicant in 1982, there was little precedential or professional guidance for defense lawyers "regarding the type of mitigating evidence that should be offered at the punishment phase of a capital murder trial."  Trial counsel stated that he knew applicant's mother and sister, knew that they were both "presentable and articulate," and knew that they could have testified about applicant's positive character traits.  They were present in the courtroom during the trial.

---

[7] 638 S.W.2d 439 (Tex. Crim. App. 1982).

[8] *See id*. at 455 (stating that defendant's claim that he was entitled to mitigation instruction or special issue had been rejected by the Supreme court in *Jurek v. Texas*).  We explained,

> The [Supreme] Court held that the statutory question concerning future dangerousness would allow a defendant to bring to a jury's attention whatever mitigating circumstances he might show. Therefore, the statute is constitutional since mitigating factors can be shown. It is not constitutionally mandated that the jury be specifically instructed about mitigating factors as long as they are able to consider them in deciding the other questions.

*Id.*

[9] Trial counsel's affidavit is remarkable for its lengthy laundry list of  "I should have . . ." *mea culpas* without any explanation for "The reason that I did not do that is . . ."  Trial counsel had been a respected criminal defense lawyer for ten years before this trial, and, although he had never been lead counsel before, had co-chaired at least one earlier capital murder trial.

Counsel said that he made a conscious decision not to call them "because [he] did not think it would do any good."  That was not necessarily a bad decision, as most of the evidence concerning mitigating character traits that applicant's family members could testify to was already in evidence, and they could have been cross-examined and impeached on other matters.[10]  Sometimes a solid, silent presence provides greater support than a voluble, but impeachable, one.

Although several Houston criminal defense lawyers submitted affidavits in the mid-1990's concerning trial counsel's failure to call mitigating witnesses during the 1983 punishment trial, none of these attorneys stated or suggested that their opinions were based upon their understanding of the prevailing professional norms in 1983 rather than in 1993

---

[10] The trial judge's findings of fact state that "much of the alleged mitigating evidence was presented during applicant's trial, such as his obtaining a G.E.D. and pursuing college credits, and could have been considered by the jury within the scope of the special issues."

Applicant testified during the guilt stage of the trial, and he said that he had received his G.E.D. in 1976, and that he had obtained 16-18 college course credits from Saint Cloud State University while in prison in Minnesota.  He said that he tried to apply to TSU when he came to Houston and had several job interviews.  He related how he had previously been robbed by someone posing as a police officer, but that, after a struggle over the robber's gun in which the robber was wounded, applicant helped to bind up his wound before telling him to go to Rosewood Hospital for medical attention.

Applicant testified to the unexpected confrontation with Detective Shirley in the apartment breezeway and that he was frightened–"I was scared to death"–during the encounter.  After the shooting, he was "panicked," "scared," and "frightened."  When applicant left his sister's apartment and waited for a friend to pick him up, he was crying.  "I felt sorry all the way around. . . . It's not that I am sorry that I got caught."  Applicant explicitly stated that he was sorry that Detective Shirley got shot.  Applicant's expressions of remorse over the murder had already been admitted at the guilt stage–and from the horse's mouth–so there would be little added value in calling his sister to reiterate that remorse and open her up to cross-examination on other matters.  All of the testimony offered at the guilt stage, including applicant's testimonial expressions of remorse, was reoffered at the punishment stage.

or 1994 when they signed their affidavits. A decade's worth of hindsight in a changing legal landscape is not the proper standard under *Strickland*.

Because I am constrained to judge applicant's trial counsel by the law and prevailing professional norms that existed in 1983, I agree with the trial judge's conclusion that "applicant fails to show deficient performance, much less harm, based on trial counsel's defensive and punishment strategy."

With these comments, I join in the Court's decision to deny relief.

Filed: June 13, 2012
Do Not Publish