Antonio Jose FERNANDEZ, Appellant

v.

The STATE of Texas, Appellee.

No. 04–94–00591–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 10, 1996.

Mark Stevens, San Antonio, for appellant.

Catherine Torres–Stahl, Assistant Criminal District Attorney, San Antonio, for appellee.

Before L. LÓPEZ, STONE and GREEN, JJ.

## OPINION

GREEN, Justice.

A jury convicted Antonio Fernandez for driving while intoxicated and the court assessed a one-year term of probation and a $450 fine. Fernandez complains the trial court erred by (1) reading back testimony in violation of article 36.28 of the Code of Criminal Procedure; (2) refusing a special instruction regarding the admissibility of intoxilyzer test results; (3) admitting evidence from an uncertified breath test, the Passive Alcohol Sensor; and (4) permitting a State witness to express a personal opinion about the alcohol concentration level at which he considers all persons to be intoxicated. We affirm.

During a traffic stop for speeding, the police officer requested that Fernandez step out of his car. When Fernandez complied, the officer observed signs indicating Fernandez might be intoxicated. Fernandez's speech was slurred, he was unsteady on his feet, his eyes were bloodshot, and his breath had a strong odor of alcohol. The officer then administered various field sobriety tests including the Passive Alcohol Sensor ("PAS") and the horizontal gaze nystagmus ("HGN"). Based on the foregoing, the officer concluded the subject was intoxicated and placed him under arrest.

Approximately one hour later, the officer administered an intoxilyzer test to Fernandez obtaining two readings—the second three minutes after the first. Fernandez's alcohol concentration level registered .127 on the first sample, and .137 on the second. The officer testified that Fernandez appeared more intoxicated at the scene than he did at the intoxilyzer facility.

In his first point of error, Fernandez complains the trial court erred in permitting trial testimony to be read back to the jury. First, Fernandez asserts that reading back testimony absent an explicit statement that members of the jury disagree on the content of testimony violates article 36.28 of the Code of Criminal Procedure.[1] Second, Fernandez argues that even if it could be inferred from the jury's notes that its members disagreed, the testimony that was read back to the jury did not answer the narrow question asked.

The jury sent out two notes to the judge requesting additional information. The first note asked:

1. In the P.O. (Police ofc.) opinion was the defendant intoxicated while driving on Perrin Beitel when sto (sic)

2. What happens if no verdict is reached, do we stay until one is reached?

The trial court responded that the jury had all the evidence they were to consider and to continue deliberating. Ten minutes later the jury sent another note to the court stating:

1. Several of us feel the Police Officer said under sworn testimony that in his opionion (sic) the defendant was intoxicated while behind the wheel of his vehicle. Was this stated by the Police Officer or not?

---

1. In pertinent part, article 36.28 reads as follows:

   In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other

   . . .

   Tex.Code Crim.Proc.Ann. art. 36.28 (Vernon 1989).

The trial court responded by bringing the jury back into the court room and, over Fernandez' objection, having the following testimony read back to the jury:

   Q  Officer Valdez, do you have an opinion as to whether or not the defendant lost the normal use of mental faculties due to the introduction of alcohol into his system?

   A  Yes, sir.

   Q  What is that opinion?

   A  In my opinion he had lost the use of his mental and physical faculties.

■  Before it is appropriate for the trial court to honor a request that a portion of the transcript be read back to the jurors, article 36.28 requires that the jury make known to the court that its members disagree regarding the content of the requested statement. *Moore v. State,* 874 S.W.2d 671, 673 (Tex. Crim.App.1994). Determining whether a dispute exists among jurors is left to the sound discretion of the trial court. *Robison v. State,* 888 S.W.2d 473, 480 (Tex.Crim.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2617, 132 L.Ed.2d 859 (1995).

■  Fernandez correctly points out that simply asking for testimony to be repeated does not reflect disagreement, and is not a proper request under article 36.28. However, in the instant case, it is reasonable from the progression of notes and the language used in the second note for the trial court to conclude that members of the jury disagreed about the officer's testimony. Stating that "[s]everal of us feel" the officer testified that in his opinion Fernandez was intoxicated when he was behind the wheel, strongly implies that the remainder of the jury did not believe the officer's testimony said that. Therefore, we find the trial court did not abuse its discretion in finding that a disagreement existed between jurors pertaining to the police officer's opinion about whether Fernandez was intoxicated while he was behind the wheel of his vehicle.

Finding a disagreement, however, does not end the examination; it still remains to be ascertained whether the answer given was appropriate. Here, Fernandez argues the trial court erred because the testimony read back to the jury did not answer the narrow question asked. Further, Fernandez contends that the selected portion of testimony re-read in answer to the jury's inquiry was not confined to the point in dispute but, instead, expresses an opinion not necessarily referable exclusively to the time Fernandez was driving his vehicle.

■  To accept this argument would be to ignore the context of the testimony from which the transcript excerpt was taken. Reciting the entire exchange between the prosecutor and the arresting officer makes plain the basis on which the officer concluded Fernandez was intoxicated and the time frame to which the officer's opinion of intoxication referred.

   Q  Officer Valdez, do you have an opinion as to whether or not the defendant lost the normal use of mental faculties, due to the introduction of alcohol into his system?

   A  Yes, sir.

   Q  What is that opinion?

   A  In my opinion he had lost the use of his mental and physical faculties.

     MR. STEVENS: That's non-responsive to the question, Your Honor. I'll object to it.

     THE COURT: Overruled.

   Q  What do you base your opinion on?

   A  Um, his speeding—the driving facts. What I observed of the defendant after I contacted him. The slurred speech, the bloodshot eyes, the odor of intoxicants on his breath, the way he performed on his field sobriety testing. All those gave indications to me. And the breath test gave indications to me he had lost the use of physical and mental faculties.

     .     .     .     .     .

   Q  When did you form the opinion that he had lost the normal use?

   A  I made that observation at the scene when I arrested him.

   Q  Did that opinion ever change?

   A  No, sir, it did not.

The foregoing clearly refutes Fernandez's contention that the testimony read back to

the jury was taken out of context and did not answer the question asked by the jury. Read in context, it is manifest that the officer testified in his opinion that Fernandez was intoxicated when he was behind the wheel of his car.[2] The excerpt which immediately follows the testimony read back to the jury pinpoints the time frame to which Officer Valdez referred when he stated that Fernandez had lost the use of his mental and physical faculties. The time frame is narrowly defined by the officer as the time "at the scene when I arrested him."

Having found that it was reasonable for the trial court to find the existence of a disagreement among jurors, and that the testimony read back to the jury specifically answered the question asked, Fernandez's first point of error is overruled.

■ Fernandez's second point of error asserts the trial court erred by refusing to instruct the jury that before it was proper to rely on results from an intoxilyzer test, the jury must believe beyond a reasonable doubt that the test results were reliable.[3]

The charge of the court, essentially verbatim from the statute, instructed the jury that Fernandez was intoxicated in either of two circumstances, if he: (1) had lost normal use of his physical or mental faculties by reason of introduction of alcohol into the body; or (2) had an alcohol concentration of .10 or

more. Further, the court instructed the jury that, before a verdict of guilty was proper, it must believe beyond a reasonable doubt that Fernandez was intoxicated at the time he operated his motor vehicle.

Fernandez cites *Forte v. State*, 707 S.W.2d 89 (Tex.Crim.App.1986), for the proposition that because the trial court failed to include the requested limiting instruction, the charge of the court did not properly state the law. *Forte v. State* stated what, seemingly, is obvious: that a conviction does not automatically follow simply because the State presents evidence of a .10 alcohol concentration. *Id.* at 94. It is still necessary for the trier of fact to be convinced beyond a reasonable doubt of the (1) trustworthiness of the evidence of alcohol concentration; and that (2) an inference can be made from the test results that the defendant had a .10 alcohol concentration at the time of the offense. *Forte v. State*, 707 S.W.2d at 94–95. However, nowhere in *Forte* does the court say, or even suggest, that conditioning instructions to that effect are required to constitute a proper statement of the law.

The charge of the court properly stated the legal definition of intoxication and also instructed the jury that to commit an offense, not only must the defendant have been intoxicated, but he had to have been intoxicated at the time he drove a motor vehicle in a public

---

**2.** According to the charge of the court:

"Intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body, or—has an alcohol concentration of .10 or more.

**3.** Special Requested Instruction Number Three which the court refused reads as follows:

Under our laws, a person is intoxicated if the state proves beyond a reasonable doubt that he has an alcohol concentration of .10 or more. If the state relies upon the .10 definition of intoxication, then proof thereof may be in the form of a chemical test showing the alcohol concentration in a defendant's body near the time of the offense if any was committed. However, conviction does not necessarily follow from the admission of chemical test results showing an alcohol concentration of .10 or more. First, the jury must be convinced beyond a reasonable doubt that the intoxilyzer machine is reliable and that the operator was qualified, that is, that the chemical test provides trustworthy evidence of alcohol concentration in a defendant's breath. Second, the

jury must be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had a .10 alcohol concentration in his body at the time he was driving and operating a motor vehicle in a public place.

Therefore, if you find beyond a reasonable doubt that the chemical breath test results admitted into evidence in this case showed that Defendant, ANTONIO FERNANDEZ, had an alcohol concentration of .10 or more, you will wholly disregard such results unless you further find beyond a reasonable doubt that:

1) The intoxilyzer machine is reliable and the operator was qualified, that is, that the chemical test provides trustworthy evidence of alcohol concentration in a Defendant's breath; and,

2) An inference can be made from the results of the chemical test that the defendant had an alcohol concentration of .10 or more at the time he was driving and operating a motor vehicle in a public place.

place. Additionally, the charge plainly instructed the jury that "if you find and believe that the defendant was not intoxicated at the time he drove or operated a motor vehicle, or if you have a reasonable doubt thereof, you will find the defendant, not guilty."

Here, as in *Forte,* Fernandez had the opportunity to present evidence to attack the trustworthiness of the intoxilyzer test results. Also, even if we were to accept Fernandez's argument that the charge of the court was wrong as it pertained to the intoxilyzer test, Fernandez cannot show that he suffered even "some harm" in light of the record of the trial as a whole. The alcohol concentration evidence derived from the intoxilyzer test is not the only evidence in the record from which the jury could reasonably conclude that Fernandez was intoxicated. The record contains ample testimony from the arresting officer from which the jury could have concluded Fernandez was intoxicated. Nothing indicates that the jury relied on the intoxilyzer results to conclude Fernandez was intoxicated. If anything, the record suggests just the opposite, that the jury relied on the officer's opinion to conclude that Fernandez had committed the offense of driving while intoxicated. Point of error number two is overruled.

■ In point of error number three, Fernandez argues the trial court erred by admitting evidence of the Passive Alcohol Sensor test results because the PAS is not certified, as required by statute. Relying on article 6701*l*–5, section 3(b), Fernandez contends that the PAS test, and any person administering it, must be certified by the Texas Department of Public Safety. Following this argument to its conclusion, if the test and test administrator have not been certified by the DPS any evidence derived from the test is not admissible.

However, the statute on which Fernandez relies refers to tests on specimens taken "for the purpose of analysis to determine the alcohol concentration" in a person's breath. TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, §§ 1, 3(a) (Vernon Supp.1995). The officer's testimony indicates that the PAS was not administered for the purpose of ascertaining alcohol concentration but, rather, was given as one of several field sobriety tests as an indicator of intoxication. Further, the county's Breath Testing Technical Supervisor testified that the PAS solely indicates the presence of alcohol and, unlike the intoxilyzer, is not reliable to show alcohol concentration.

We conclude that it was not error to admit evidence of the Passive Alcohol Sensor. The State did not attempt to use the PAS to establish a quantitative alcohol concentration factor, rather the PAS evidence was only introduced qualitatively as another indicator of intoxication relied on by the officer, much like the other field sobriety tests. Point of error number three is overruled.

■ Fernandez's last point of error complains the trial court erred in permitting the State's witness to give his personal opinion that every person is intoxicated at a breath alcohol concentration of .08. Fernandez posits that it is misleading to permit the State's expert to testify that a person is intoxicated at .08 when the statute defines intoxication as .10 alcohol concentration. Fernandez maintains that rule 403 of the rules of evidence requires the exclusion of confusing or misleading testimony. The State counters that the expert's testimony went not to the alcohol concentration level as much as it addressed whether the defendant had lost use of his mental and physical faculties.

The county's technical supervisor offered the opinion in question based on numerous studies investigating the point at which a person's ability to operate an automobile is impaired by introduction of alcohol into their system. After acknowledging familiarity with the statutory definition of intoxication, and over Fernandez's objection, the technical supervisor responded that in his opinion an individual "is impaired for driving a motor vehicle" at an alcohol concentration of .08 or more. In response to the prosecutor's query about an individual with .127 alcohol concentration, the technical supervisor opined that he would have "lost normal use of mental or physical faculties" for the purpose of driving a car.

The scenario in *Adams v. State,* 808 S.W.2d 250, 252 (Tex.App.—Houston [1st Dist.] 1991, no pet.), is similar to the case at

hand. The State's chemist testified that anyone with an alcohol concentration of .08 or above was intoxicated. *Id.* The court held that the chemist's opinion did not implicate the legal presumption of intoxication which the statute sets at .10. *Id.* at 252–53. "The chemist's testimony was relevant to show that appellant did not have the normal use of his faculties.... The chemist here did not lower the legal presumption; he merely gave his opinion concerning intoxication due to loss of faculties." *Id.* at 252–53.

In the case at hand, the county's breath test technical supervisor merely offered the opinion that a person loses use of their mental and physical faculties at an alcohol concentration of .08 and above. The trial court did not err in permitting the county's technical supervisor to offer his expert testimony regarding the point at which a person loses the use of their mental and physical faculties. Point of error number four is overruled and the judgment of the trial court is affirmed.