James Shad NEAL, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–02–0217–CR.

Court of Appeals of Texas,
Amarillo.

June 18, 2003.

Stephen Hamilton, Boatwright & Hamilton, LLP, Lubbock, for appellant.

Wade Jackson, Assistant Criminal District Attorney, Lubbock, for State.

Before QUINN, REAVIS, and CAMPBELL, JJ.

BRIAN QUINN, Justice.

In one issue, appellant James Shad Neal appeals his conviction for driving while intoxicated. In doing so, he contends that the trial court erred in re-reading to the jury more testimony than needed to answer its inquiry via art. 36.28 of the Texas Code of Criminal Procedure. We affirm the judgment of the trial court.

### Background

After each side completed the presentation of their respective cases and during deliberations by the jury, the jury foreman sent the following to the trial judge:

> We would like to review the testimony of Ms. Ochoa. Specifically the part regarding whether or not a person could produce a 0.172 and have been a 0.08 [one] hour before and her clarification after defense cross.[1]

In response, the trial judge informed the jury that "[n]o part of a witnesse's [sic] testimony may be read back to you unless you certify ... that you are in disagreement about a particular portion of the witnesse's [sic] statement." Then, the trial court received the following missive from the jury:

> We would like to review the testimony of Ms. Ochoa. We are in disagreement over whether or not she stated a person could blow a 0.172 at the time of the test while having been 0.08 some period of time prior to the test time.

In response, the following excerpt from Ms. Ochoa's testimony was read to the jury:

> Q: Ms. Ochoa, what is extrapolation?
>
> A: Extrapolation is trying to determine the alcohol concentration from a given result at one time and what

that would have been—given specific information what that would have been at a prior time period.

Q: And that's a specific number at a specific time?

A: Right. There is also very specific information needed to do that.

Q: Is it possible for someone to blow .172 and one hour earlier have blown under a .08?

\* \* \*

A: Yes.

Q: It is possible?

A: Sure.

Q: How is that possible?

A: Okay. A person controls their own absorption by the amount that is consumed and the time period that ... is consumed in and the biggest factor would be empty stomach. Depending on how much a person drinks, they can absorb a lot within an hour if they drink a lot, and so you would have to have a lot consumed, but you can—you can absorb that much in an hour, especially on an empty stomach, to reach a higher alcohol concentration at a later time.

Q: So if I were pulled over by an officer and one hour later I blew a .172, you're saying it's possible for me to have been under .08 while I was driving?

A: But you would have had—yes, but you would have had to consume that a lot in a very, very short period of time immediately before that stop was made. On an empty stomach that short period of time about 15 minutes because then you're looking

**1.** Ms. Ochoa was the technical supervisor in breath alcohol testing for the Texas Department of Public Safety.

for complete absorption. So if you consumed a whole lot right before the stop, then you have a lot of absorption, but it has to be a lot.

### Issue

 Appellant argues that the trial court read too much in response to the jury's inquiry. That is, it should have only read the specific answer "yes" to the question about whether Ochoa said someone could have a blood alcohol level of 0.172 while only having one of 0.08 an hour earlier.[2] We overrule the issue.

 According to art. 36.28 of the Code of Criminal Procedure, if the jurors disagree about what a witness said, they may have read to them from the reporter's notes that part of the witness' testimony or the particular point in dispute, but "no other." TEX.CODE CRIM. PROC. ANN. art. 36.28 (Vernon 1981). When such a circumstance arises, the trial court must interpret the communication, decide what portion of the testimony best answers the question, and limit the testimony accordingly. *Brown v. State,* 870 S.W.2d 53, 55 (Tex. Crim.App.1994); *Goldstein v. State,* 803 S.W.2d 777, 795 (Tex.App.-Dallas 1991, pet. ref'd). Furthermore, the manner and extent of its response cannot be held wrong unless the trial court abused its discretion. *Brown v. State,* 870 S.W.2d at 55; *Megason v. State,* 19 S.W.3d 883, 888 (Tex.App.-Texarkana 2000, pet. ref'd).

Here, appellant would have the trial court strictly interpret the query posed by the jury. Furthermore, in construing it, the court would simply be limited to considering the missive in which the jurors indicated that they disagreed, he continues. It purportedly could not consider prior notes from the jury directly relating to the dispute. We disagree for to adopt such a stance would run afoul of precedent. For instance, the appellant, in *Fernandez v. State,* 915 S.W.2d 572 (Tex.App.-San Antonio 1996, no pet.), argued that the trial court erred in reading testimony to the jury because its written inquiry said nothing about a disagreement. In rejecting the argument, the reviewing court considered not only the message issued by the jury immediately before the trial court read the testimony in question but also the prior notes from those jurors. *Id.* at 574. According to the court, "it [was] reasonable *from the progression of notes* and the language used in the second note for the trial court to conclude that members of the jury disagreed about the officer's testimony." *Id.* (Emphasis added).

Similarly, in *Randon v. State,* 107 S.W.3d 646, 651 (Tex.App.-Texarkana 2003, no pet. h.), the appellate court considered a progression of notes in assessing whether there existed a disagreement for purposes of art. 36.28. Furthermore, it did so since the Court of Criminal Appeals did so in *Robison v. State,* 888 S.W.2d 473 (Tex.Crim.App.1994), *cert. denied,* 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 859 (1995) (again involving the issue of wheth-

---

**2.** Appellant also contends that reading the additional testimony was prejudicial and bolstered the State's case. However, before the trial court, he only objected on the ground that the matter the court proposed to read exceeded the scope of the certification. Because the objections about the prejudicial nature of the testimony and bolstering were not raised below, they are waived. *See* TEX.R.APP. P. 33.1(a)(1) (requiring that a complaint be made to the trial court by stating the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint unless the grounds are apparent from the context); *Goff v. State,* 931 S.W.2d 537, 551 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997) (holding that if trial objections do not comport with arguments on appeal, error has not been preserved).

er the jurors disagreed about particular testimony).

*Robison* is of import since there the Court of Criminal Appeals explained the two competing interests underlying art. 36.28 and expounded upon their balance. One involved the need to avoid commenting upon the evidence while the other entailed the desire to provide the jury with the means to resolve any factual disputes its members may have. *Id.* at 480. More importantly, in striking the appropriate balance between them, it implicitly recognized that a trial court may consider a progression of notes from the jury when attempting to fulfill the mandate of art. 36.28. *Id.* at 480–81.

One other noteworthy opinion is that of *Brown v. State,* 870 S.W.2d 53 (Tex.Crim. App.1994). There, the issue did not pertain to the existence of a disagreement, as in *Robison,* but whether the trial court erred by re-reading too much testimony. Moreover, the Court of Criminal Appeals affirmed the trial court's decision even though some of the testimony read did not expressly address the disagreement mentioned by the jury. It did so because the additional testimony served to place in "context" that which was directly on point. *Id.* at 56.

From *Brown, Robison, Randon,* and *Fernandez,* we deduce that the context of the final note cannot be ignored. It must be considered to determine not only if a disagreement exists but also the extent of the disagreement and the appropriate response. Furthermore, that context is comprised of not only the words in the final note but also those appearing in any prior notes giving rise to the final one. That is to say, there must be a logical nexus between the prior and ultimate notes for the former to be properly contextual of the latter. And, all this is done on a case by case manner to avoid commenting upon the evidence and to give the jury that needed to resolve factual disputes.

Here, we have such a nexus between the first and last note. Both sought excerpts of Ochoa's testimony. Additionally, the excerpts pertained to her comment about whether an individual could have a blood alcohol of 0.172 an hour after having one of 0.08. And, while the latter note failed to expressly mention whether the dispute implicated Ochoa's explanation of her one word answer, the former did not; both the answer and her explanation were sought.[3] Thus, in reading the last note in context with the first, we are unable to hold that the trial court abused its discretion in opting to read both the one word answer "yes" as well as Ochoa's explanation of that answer.[4]

Appellant relies on *Pugh v. State,* 376 S.W.2d 760 (Tex.Crim.App.1964) to urge otherwise. However, in *Pugh,* the jury asked only about the date and hour that the defendant had been picked up by a highway patrolman. The parties stipulated to the answer which was then read to the jury. Despite this, the trial court then had other portions of the officer's testimony read to the jury which in no way related to the date and hour in question. That act was found to be an abuse of discretion.

---

**3.** Common sense suggests that an explanation of an answer is just as much a part of the answer as the answer is itself. Indeed, snippets of testimony cannot be pulled from context in a way that engenders confusion. At least that is what the Court of Criminal Appeals indicated in *Brown.*

**4.** This is not to say that the answer would be the same had the jury expressly evinced that it did not care to hear the explanation. Simply stating that they had a disagreement about whether she said individuals could have different blood alcohol contents at different times does not evince such.

*Id.* at 761–62. Here, by contrast, all the testimony read to the jury related to the question asked, as that question was determined by its context.

As the trial court stated, "the jury is entitled to ... a full and fair answer." Ochoa's explanatory statements could reasonably be considered part of the information needed by the jury to resolve its disagreement, given the several notes involved. Accordingly, the judgment of the trial court is affirmed.