ex parte albright

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-301-CR

EX PARTE 

JENNIFER LEE ALBRIGHT 

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

------------

OPINION

------------

I.  
Introduction

Appellant Jennifer Lee Albright seeks relief from the trial court’s denial of her writ of habeas corpus.  We affirm.

II.  
Factual and Legal Background
 

Appellant was charged by information with the offense of driving while intoxicated and entered a plea of not guilty.  A trial on the merits began on March 17, 2003, but it ended in a mistrial when one of the jurors was unable to continue.  A subsequent trial on the merits began on April 28, 2003.  Prior to trial, the court granted appellant’s motion in limine excluding all evidence of her portable breath test (“PBT”) results.  At trial, however, the State’s witness Officer Wes Rutherford testified that appellant’s PBT indicated a blood alcohol content of over 0.08 in response to a question by Ms. Molly Kicklighter, one of the prosecuting attorneys: 

[Ms. Kicklighter]:  And you have indicated that a [PBT] was given on the evening of October 17
th
?

 [Officer Rutherford]:  Yes, ma’am.

[Ms. Kicklighter]:  And what does that breath test indicate?

[Officer Rutherford]:  It indicates the presence -- it proves or disproves the presence of alcohol in a person’s system.

[Ms. Kicklighter]:  And on this occasion, what did the breath test indicate? 

[Defense Counsel]:  Your Honor, may we approach the bench?

[The Court]:  Yes, you may.

(On-the-record discussion at the bench.)

[Defense Counsel]:  I don’t think the question is objectionable, but I want to make sure he’s not -- instructed not to blurt out, if he is, it indicated . . . the presence of alcohol.  I don’t think that’s admissible, but I’m trying to be very cautious.

Ms. Kicklighter:  I’ve talked to him about that.

Ms. Shipman [Senior Prosecutor]  He does know? 

Ms. Kicklighter:  I’ve been very cautious.

(Open court, Defendant/jury present.)

[Ms. Kicklighter]:  Officer Rutherford, on this occasion, what did the breath test indicate? 

[Officer Rutherford]:  The breath test indicated a blood alcohol content over 0.08 --

Pursuant to the defense counsel’s objection to Officer Rutherford’s testimony, request for an instruction to disregard, and motion for mistrial, the trial court sustained the objection, instructed the jury to disregard the testimony, and granted a mistrial.  The trial court reset the case on the trial docket for June 23, 2003.

On June 20, 2003, appellant filed a motion to dismiss and special plea of double jeopardy.  On June 24, 2003, after holding a hearing on the motion, the trial court denied the motion.  Appellant then filed an application for writ of habeas corpus seeking to avoid the retrial on the basis of double jeopardy. Following a hearing, the trial court denied appellant relief.  This appeal followed.   In two points of error, appellant argues that the trial court erred in denying her writ of habeas corpus relief because the prosecutor’s intentional or reckless conduct caused the mistrial, thereby violating appellant’s rights under the Texas and United States Constitutions.

III.  
Applicable Law

A.  Standard of Review

When reviewing a trial court’s decision to grant or deny relief on a writ of habeas corpus, an appellate court should afford almost total deference to the trial court’s determination of the historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor.  
Ex parte Peterson
, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003).  We afford the same amount of deference to the trial court’s ruling on “application of law to fact questions” if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.  
Id
.  However, if the resolution of those ultimate questions turns on an application of legal standards, we review the determination 
de novo
.  
Id
.  Absent a clear abuse of discretion, we accept the trial court’s decision whether to grant the relief requested in the habeas corpus petition.  
Id.

B.  Double Jeopardy

The double jeopardy clauses of both article 1, section 14 of the Texas Constitution and the Fifth Amendment to the United States Constitution “protect a criminal defendant from repeated prosecutions for the same offense.”  
Id. 
at 810 (citing 
Oregon v. Kennedy
, 456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982)); 
Bauder v. State
, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996).  Double jeopardy principles, however, do not prohibit “multiple trials of a single criminal charge if the first trial resulted in a mistrial that:  (1) was justified under the manifest necessity doctrine; or (2) was requested or consented to by the defense, absent prosecutorial misconduct which forced the mistrial.”  
Peterson
, 117 S.W.3d at 810-11.  It is the second prong that is at issue in this case.

Under the federal standard, the key inquiry is whether a prosecutor’s misconduct was intended to goad the defendant into asking for a mistrial.  
Id. 
(citing 
Kennedy
, 456 U.S. at 676, 102 S. Ct. at 2089).  However, under the Texas standard, which provides defendants added protection, “a prosecutor must at least be aware that his manifestly improper misconduct is likely to result in a mistrial, but he nonetheless consciously ignores that likelihood and commits the misconduct.” 
Id. 
at 816.  Under either standard, the prosecutor’s mens rea is pivotal to a reviewing court determining whether there is a double jeopardy bar. 
 Id. 

In 
Ex parte Peterson
, the Texas Court of Criminal Appeals
 offered the following three-part analysis to clarify the standard under which the double jeopardy clause of the Texas Constitution prohibits retrial after a defendant successfully requests a mistrial:  (1) Did the manifestly improper prosecutorial misconduct provoke the mistrial? (2) Was the mistrial required because the prejudice produced from that misconduct could not be cured by an instruction to disregard? and (3) Did the prosecutor engage in that conduct with the intent to goad the defendant into requesting a mistrial (
Kennedy
 standard) or with conscious disregard for a substantial risk that the trial court would be required to declare a mistrial (
Bauder
 standard)?
(footnote: 1) 
 Id
. at 816-17.

For double jeopardy to bar retrial, a prosecutor’s inadvertence, sloppiness, or negligence in regard to offering objectionably and unfairly prejudicial evidence or committing other errors of judgment will not be sufficient to erect a jeopardy bar no matter how manifestly prejudicial the result.  
Id. 
at 817.  Moreover, in determining whether the prosecutor acted intentionally or recklessly, the reviewing court must take into account the appropriate substantive law.  
See State v. Lee
, 15 S.W.3d 921, 924 (Tex. Crim. App. 2000).

In a habeas corpus proceeding, the applicant bears the burden to prove by a 
preponderance of the evidence that a retrial is barred by double jeopardy. 
 Peterson
, 117 S.W.3d at 818.
  
In order to meet that burden the applicant must present sufficient evidence on all three prongs of the above analysis.  
Id.  
In determining whether the burden has been met, the court must examine the objective facts and circumstances surrounding the events that led to the mistrial in deciding whether the prosecutor’s alleged misconduct was manifestly improper and committed with the requisite recklessness. 
 Id.

IV. 
 Analysis

From a review of this record, it is clear that the trial court did not abuse its discretion in determining that the prosecutor’s conduct was not “manifestly improper.”  At the June 24, 2003 hearing on appellant’s motion to dismiss and special plea of double jeopardy, Ms. Kicklighter testified she had instructed Officer Rutherford on the morning of the trial not to give the numerical value of the test results and to state only whether there was the presence or absence of alcohol.  She testified that Officer Rutherford appeared to understand, indicated to her that he had testified in such cases before, and was aware that the numerical results were not admissible.  She testified that she had no concern whatsoever that he might give a numerical result should she call him to testify.  Ms. Kicklighter said that during the bench conference when she represented to the court that no further instructions were needed on the issue, it was because she believed at the time that no further instructions were needed.  She indicated that during the trial the officer’s “presence of alcohol” answer to her previous question about the PBTs in general led her to expect another such “presence of alcohol” answer in regard to her question regarding appellant’s test.  Ms. Kicklighter testified that she was dismayed by Officer Rutherford’s answer.  She concluded by saying that she did not believe there was anything else she could have done to keep Officer Rutherford from giving the answer he gave.

After hearing arguments for and against appellant’s motion, the trial court, who also heard the two related trials of this case that ended in mistrials, stated: 

I just don’t find that Ms. Kicklighter or Ms. Shipman in this particular case, that their action was deliberate or reckless in this particular case.  I didn’t anticipate that, based on the question that was asked by Ms. Kicklighter prior to the objection/bench conference, would indicate or had any reason to believe that he was going to give a blood alcohol content result.  I assumed based upon his response to the previous, it indicates the presence -- it proves or disproves the presence of alcohol in a person’s system, the logical follow-up question:  What would it indicate in this particular case, was asked, which I would have assumed he would have turned right around and said exactly what he said in the previous answer; and that is, it proved the presence of alcohol.  I had no . . . concern that he was going to give a blood alcohol content based on the question and his previous response.  And I don’t think the State of Texas did either.  I think Ms. Kicklighter and Ms. Shipman -- to the extent that Ms. Shipman had any input at all in prepping Officer Rutherford, I think they did admonish him and told him not to put a result in or give us the result. . . .  I think, like I said before, that they were . . . as surprised as we were that he even started his response, [i]t indicated a blood alcohol content over 0.08. 

At the July 2, 2003 hearing on appellant’s writ of habeas corpus and special plea of double jeopardy, the trial court took judicial notice of testimony from the prior hearing on appellant’s motion to dismiss and special plea of double jeopardy.  Appellant called Officer Rutherford, who testified that he did talk to Ms. Kicklighter about the PBT prior to giving his testimony.  He testified further that during his conversation with Ms. Kicklighter, he informed her that he knew the actual numerical PBT results were not admissible and that officers could only say that the results would be used to confirm or deny the presence of alcohol in the blood.  However, he did not remember her informing him that there was a motion in limine regarding the PBT results.  Officer Rutherford maintained that he said “0.0“
 at the trial, not “0.08,” and that he would not have said 0.08 because he knew better than to do that.  He said that he generally used “0.0“ in explaining to people that anything over zero indicates to the police that there is alcohol in a person’s blood.  He said that he did not tell Ms. Kicklighter, however, that he would explain the results that way.

 Following Officer Rutherford’s testimony, both sides offered arguments.  During his argument to the court, appellant’s attorney indicated that he would let his previous argument from the prior hearing stand as to the alleged misconduct of the prosecutors.  Then, he focused his argument on an issue that he has not raised in this appeal:  whether the intentional or reckless misconduct of a prosecution witness, in this case Officer Rutherford, can be imputed to the prosecution resulting in a jeopardy bar.  Since appellant has not raised this issue on appeal, we will not address it here.  
See
 
Tex. R. App. P.
 38.1(h).  However, while making the argument, appellant’s attorney appeared to concede that Ms. Kicklighter had done what was necessary in light of Officer Rutherford’s assurances that he would not give the numerical results of appellant’s PBT before trial:

I mean, in fairness to Ms. Kicklighter, I don’t know how you can ever instruct a witness not to say that when he says:  I know I’m not supposed to say it.  I know it so strongly I would never say it.  I know it so strongly that it’s the same as saying bomb on an airplane.  That it is so out of bounds that it’s just not done.  And then that’s what he did.

After arguments were made, the trial court noted that it would not restate its position on Ms. Kicklighter and Ms. Shipman, as it was clearly articulated in the record from the previous hearing.  In denying the motion, the trial court also found that Officer Rutherford’s statement was not made intentionally or recklessly and opined that it was just an unintentional slip.

On appeal, appellant now claims that Ms. Kicklighter “was aware of, but consciously disregarded, either the risk that an objectionable event for which [she] was responsible would require a mistrial at the defendant’s request.”  
See Lee
, 15 S.W.3d at 925.  Specifically, appellant contends Ms. Kicklighter knew the risk of further questioning Officer Rutherford after the bench conference; that she knew that a response could be objectionable, in violation of the court’s order, and lead to a mistrial; and that she decided not to briefly remind the officer of the court’s order.

“Prosecutorial misconduct reasonably reaches only that conduct which is qualitatively more serious than simple error and connotes an intentional flouting of known rules or laws.”  
Peterson
, 117 S.W.3d at 816-17 n.55 (citation omitted).  References to PBTs have generally been treated much like references to other field sobriety tests in that they can be referred to in establishing probable cause for an arrest. 
 See, e.g., Tex. Dep’t of Pub. Safety v. Bond
, 955 S.W.2d 441, 447 (Tex. App.—Fort Worth 1997, no pet.); 
Fernandez v. State
, 915 S.W.2d 572, 576 (Tex. App.—San Antonio 1996, no pet.).  It is clear from the record in this case that the prosecutor merely intended to elicit from Officer Rutherford that the PBT indicated the presence of alcohol for probable cause purposes.  The evidence shows that Ms. Kicklighter made her best effort to make sure that Officer Rutherford knew not to give the numerical results of the PBT.  Appellant’s counsel admitted as much.

We conclude that the trial court did not abuse its discretion in determining  the prosecutor’s conduct was not “manifestly improper.”  Appellant, therefore, has not met her burden on the first prong of the 
Ex parte Peterson 
analysis.  Moreover, we need not look to the remaining prongs.  
See Peterson
, 117 S.W.3d at 816 n.55 (stating that “[i]f the prosecutor’s conduct, viewed objectively, was not ‘manifestly improper,’ then the double jeopardy inquiry ends at this first stage”).  Accordingly, we hold that because the trial court did not abuse its discretion in determining that the prosecutors did not intentionally or recklessly cause appellant to request a mistrial, double jeopardy does not bar retrial of the case.  We overrule appellant’s two points.   

V.  
Conclusion

Having overruled appellant’s points on appeal, we affirm the trial court’s ruling. 

SAM J. DAY

JUSTICE

PANEL B: DAUPHINOT and GARDNER, JJ.; and SAM J. DAY, J. (Retired, 

Sitting by Assignment).

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  January 8, 2004

FOOTNOTES
1:
Some of the objective facts and circumstances that the court of criminal appeals suggests
 the trial and appellate courts consider in assessing the prosecutor’s mens rea include, but are not limited to the following:  (1) Was the misconduct a reaction to abort a trial that was “going badly for the State”? In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal? (2) Was the misconduct repeated despite admonitions from the trial court? (3) Did the prosecutor provide a reasonable, “good faith” explanation for the conduct? (4) Was the conduct “clearly erroneous”? (5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety? and (6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct? 
 Id
. at 818-19.