COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-03-301-CR
 
EX PARTE 
 
JENNIFER LEE ALBRIGHT                                                                         
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY 
 
------------
 
OPINION
 
------------
I. Introduction
        Appellant Jennifer Lee Albright seeks relief from the trial court’s denial of 
her writ of habeas corpus. We affirm. 
II. Factual and Legal Background 
        Appellant was charged by information with the offense of driving while 
intoxicated and entered a plea of not guilty. A trial on the merits began on 
March 17, 2003, but it ended in a mistrial when one of the jurors was unable 
to continue. A subsequent trial on the merits began on April 28, 2003. Prior 
to trial, the court granted appellant’s motion in limine excluding all evidence of 
her portable breath test (“PBT”) results. At trial, however, the State’s witness 
Officer Wes Rutherford testified that appellant’s PBT indicated a blood alcohol 
content of over 0.08 in response to a question by Ms. Molly Kicklighter, one of 
the prosecuting attorneys: 
[Ms. Kicklighter]: And you have indicated that a [PBT] was
given on the evening of October 17th?
 
 [Officer Rutherford]: Yes, ma’am. 
 
[Ms. Kicklighter]: And what does that breath test indicate? 
 
[Officer Rutherford]: It indicates the presence -- it proves or 
disproves the presence of alcohol in a person’s system. 
 
[Ms. Kicklighter]: And on this occasion, what did the breath 
test indicate? 
 
[Defense Counsel]: Your Honor, may we approach the 
bench?
 
[The Court]: Yes, you may. 
 
(On-the-record discussion at the bench.) 
 
[Defense Counsel]: I don’t think the question is 
objectionable, but I want to make sure he’s not -- instructed not to 
blurt out, if he is, it indicated . . . the presence of alcohol. I don’t 
think that’s admissible, but I’m trying to be very cautious. 
 
Ms. Kicklighter: I’ve talked to him about that. 
 
Ms. Shipman [Senior Prosecutor] He does know? 
 
Ms. Kicklighter: I’ve been very cautious. 
 
(Open court, Defendant/jury present.) 
[Ms. Kicklighter]: Officer Rutherford, on this occasion, what
did the breath test indicate? 
 
[Officer Rutherford]: The breath test indicated a blood 
alcohol content over 0.08 -- 
        Pursuant to the defense counsel’s objection to Officer Rutherford’s 
testimony, request for an instruction to disregard, and motion for mistrial, the 
trial court sustained the objection, instructed the jury to disregard the 
testimony, and granted a mistrial. The trial court reset the case on the trial 
docket for June 23, 2003. 
        On June 20, 2003, appellant filed a motion to dismiss and special plea 
of double jeopardy. On June 24, 2003, after holding a hearing on the motion, 
the trial court denied the motion. Appellant then filed an application for writ of 
habeas corpus seeking to avoid the retrial on the basis of double jeopardy. 
Following a hearing, the trial court denied appellant relief. This appeal followed. 
        In two points of error, appellant argues that the trial court erred in 
denying her writ of habeas corpus relief because the prosecutor’s intentional or 
reckless conduct caused the mistrial, thereby violating appellant’s rights under 
the Texas and United States Constitutions. 
III. Applicable Law

A. Standard of Review

        When reviewing a trial court’s decision to grant or deny relief on a writ 
of habeas corpus, an appellate court should afford almost total deference to the 
trial court’s determination of the historical facts that are supported by the 
record, especially when the fact findings are based on an evaluation of 
credibility and demeanor. Ex parte Peterson, 117 S.W.3d 804, 819 (Tex. Crim. 
App. 2003). We afford the same amount of deference to the trial court’s ruling 
on “application of law to fact questions” if the resolution of those ultimate 
questions turns on an evaluation of credibility and demeanor. Id. However, if 
the resolution of those ultimate questions turns on an application of legal 
standards, we review the determination de novo. Id. Absent a clear abuse of 
discretion, we accept the trial court’s decision whether to grant the relief 
requested in the habeas corpus petition. Id. 
B. Double Jeopardy
        The double jeopardy clauses of both article 1, section 14 of the Texas 
Constitution and the Fifth Amendment to the United States Constitution 
“protect a criminal defendant from repeated prosecutions for the same 
offense.” Id. at 810 (citing Oregon v. Kennedy, 456 U.S. 667, 671, 102 S. Ct. 
2083, 2087 (1982)); Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 
1996). Double jeopardy principles, however, do not prohibit “multiple trials of 
a single criminal charge if the first trial resulted in a mistrial that: (1) was 
justified under the manifest necessity doctrine; or (2) was requested or 
consented to by the defense, absent prosecutorial misconduct which forced the 
mistrial.” Peterson, 117 S.W.3d at 810-11. It is the second prong that is at 
issue in this case. 
        Under the federal standard, the key inquiry is whether a prosecutor’s 
misconduct was intended to goad the defendant into asking for a mistrial. Id. 
(citing Kennedy, 456 U.S. at 676, 102 S. Ct. at 2089). However, under the 
Texas standard, which provides defendants added protection, “a prosecutor 
must at least be aware that his manifestly improper misconduct is likely to 
result in a mistrial, but he nonetheless consciously ignores that likelihood and 
commits the misconduct.” Id. at 816. Under either standard, the prosecutor’s 
mens rea is pivotal to a reviewing court determining whether there is a double 
jeopardy bar. Id. 
        In Ex parte Peterson, the Texas Court of Criminal Appeals offered the 
following three-part analysis to clarify the standard under which the double 
jeopardy clause of the Texas Constitution prohibits retrial after a defendant 
successfully requests a mistrial: (1) Did the manifestly improper prosecutorial 
misconduct provoke the mistrial? (2) Was the mistrial required because the 
prejudice produced from that misconduct could not be cured by an instruction 
to disregard? and (3) Did the prosecutor engage in that conduct with the intent 
to goad the defendant into requesting a mistrial (Kennedy standard) or with 
conscious disregard for a substantial risk that the trial court would be required 
to declare a mistrial (Bauder standard)? 
 

 Id. at 816-17. 
        For double jeopardy to bar retrial, a prosecutor’s inadvertence, sloppiness, 
or negligence in regard to offering objectionably and unfairly prejudicial evidence 
or committing other errors of judgment will not be sufficient to erect a jeopardy 
bar no matter how manifestly prejudicial the result. Id. at 817. Moreover, in 
determining whether the prosecutor acted intentionally or recklessly, the 
reviewing court must take into account the appropriate substantive law. See 
State v. Lee, 15 S.W.3d 921, 924 (Tex. Crim. App. 2000). 
        In a habeas corpus proceeding, the applicant bears the burden to prove 
by a preponderance of the evidence that a retrial is barred by double jeopardy. 
Peterson, 117 S.W.3d at 818. In order to meet that burden the applicant must 
present sufficient evidence on all three prongs of the above analysis. Id. In 
determining whether the burden has been met, the court must examine the 
objective facts and circumstances surrounding the events that led to the mistrial 
in deciding whether the prosecutor’s alleged misconduct was manifestly 
improper and committed with the requisite recklessness. Id. 
IV. Analysis
        From a review of this record, it is clear that the trial court did not abuse 
its discretion in determining that the prosecutor’s conduct was not “manifestly 
improper.” At the June 24, 2003 hearing on appellant’s motion to dismiss and 
special plea of double jeopardy, Ms. Kicklighter testified she had instructed 
Officer Rutherford on the morning of the trial not to give the numerical value of 
the test results and to state only whether there was the presence or absence 
of alcohol. She testified that Officer Rutherford appeared to understand, 
indicated to her that he had testified in such cases before, and was aware that 
the numerical results were not admissible. She testified that she had no 
concern whatsoever that he might give a numerical result should she call him 
to testify. Ms. Kicklighter said that during the bench conference when she 
represented to the court that no further instructions were needed on the issue, 
it was because she believed at the time that no further instructions were 
needed. She indicated that during the trial the officer’s “presence of alcohol” 
answer to her previous question about the PBTs in general led her to expect 
another such “presence of alcohol” answer in regard to her question regarding 
appellant’s test. Ms. Kicklighter testified that she was dismayed by Officer 
Rutherford’s answer. She concluded by saying that she did not believe there 
was anything else she could have done to keep Officer Rutherford from giving 
the answer he gave. 
        After hearing arguments for and against appellant’s motion, the trial 
court, who also heard the two related trials of this case that ended in mistrials, 
stated: 
I just don’t find that Ms. Kicklighter or Ms. Shipman in this
particular case, that their action was deliberate or reckless in this
particular case. I didn’t anticipate that, based on the question that
was asked by Ms. Kicklighter prior to the objection/bench
conference, would indicate or had any reason to believe that he
was going to give a blood alcohol content result. I assumed based
upon his response to the previous, it indicates the presence -- it
proves or disproves the presence of alcohol in a person’s system,
the logical follow-up question: What would it indicate in this
particular case, was asked, which I would have assumed he would
have turned right around and said exactly what he said in the
previous answer; and that is, it proved the presence of alcohol. I
had no . . . concern that he was going to give a blood alcohol
content based on the question and his previous response. And I
don’t think the State of Texas did either. I think Ms. Kicklighter
and Ms. Shipman -- to the extent that Ms. Shipman had any input
at all in prepping Officer Rutherford, I think they did admonish him
and told him not to put a result in or give us the result. . . . I think,
like I said before, that they were . . . as surprised as we were that
he even started his response, [i]t indicated a blood alcohol content
over 0.08. 
        At the July 2, 2003 hearing on appellant’s writ of habeas corpus and 
special plea of double jeopardy, the trial court took judicial notice of testimony 
from the prior hearing on appellant’s motion to dismiss and special plea of 
double jeopardy. Appellant called Officer Rutherford, who testified that he did 
talk to Ms. Kicklighter about the PBT prior to giving his testimony. He testified 
further that during his conversation with Ms. Kicklighter, he informed her that 
he knew the actual numerical PBT results were not admissible and that officers 
could only say that the results would be used to confirm or deny the presence 
of alcohol in the blood. However, he did not remember her informing him that 
there was a motion in limine regarding the PBT results. Officer Rutherford 
maintained that he said “0.0“ at the trial, not “0.08,” and that he would not 
have said 0.08 because he knew better than to do that. He said that he 
generally used “0.0“ in explaining to people that anything over zero indicates 
to the police that there is alcohol in a person’s blood. He said that he did not 
tell Ms. Kicklighter, however, that he would explain the results that way. 
         Following Officer Rutherford’s testimony, both sides offered arguments. 
During his argument to the court, appellant’s attorney indicated that he would 
let his previous argument from the prior hearing stand as to the alleged 
misconduct of the prosecutors. Then, he focused his argument on an issue that 
he has not raised in this appeal: whether the intentional or reckless misconduct 
of a prosecution witness, in this case Officer Rutherford, can be imputed to the 
prosecution resulting in a jeopardy bar. Since appellant has not raised this issue 
on appeal, we will not address it here. See Tex. R. App. P. 38.1(h). However, 
while making the argument, appellant’s attorney appeared to concede that Ms. 
Kicklighter had done what was necessary in light of Officer Rutherford’s 
assurances that he would not give the numerical results of appellant’s PBT 
before trial: 
I mean, in fairness to Ms. Kicklighter, I don’t know how you can
ever instruct a witness not to say that when he says: I know I’m
not supposed to say it. I know it so strongly I would never say it. 
I know it so strongly that it’s the same as saying bomb on an
airplane. That it is so out of bounds that it’s just not done. And
then that’s what he did.
        After arguments were made, the trial court noted that it would not restate 
its position on Ms. Kicklighter and Ms. Shipman, as it was clearly articulated in 
the record from the previous hearing. In denying the motion, the trial court also 
found that Officer Rutherford’s statement was not made intentionally or 
recklessly and opined that it was just an unintentional slip. 
        On appeal, appellant now claims that Ms. Kicklighter “was aware of, but 
consciously disregarded, either the risk that an objectionable event for which 
[she] was responsible would require a mistrial at the defendant’s request.” See 
Lee, 15 S.W.3d at 925. Specifically, appellant contends Ms. Kicklighter knew 
the risk of further questioning Officer Rutherford after the bench conference; 
that she knew that a response could be objectionable, in violation of the court’s 
order, and lead to a mistrial; and that she decided not to briefly remind the 
officer of the court’s order. 
        “Prosecutorial misconduct reasonably reaches only that conduct which 
is qualitatively more serious than simple error and connotes an intentional 
flouting of known rules or laws.” Peterson, 117 S.W.3d at 816-17 n.55 
(citation omitted). References to PBTs have generally been treated much like 
references to other field sobriety tests in that they can be referred to in 
establishing probable cause for an arrest. See, e.g., Tex. Dep’t of Pub. Safety 
v. Bond, 955 S.W.2d 441, 447 (Tex. App.—Fort Worth 1997, no pet.); 
Fernandez v. State, 915 S.W.2d 572, 576 (Tex. App.—San Antonio 1996, no 
pet.). It is clear from the record in this case that the prosecutor merely 
intended to elicit from Officer Rutherford that the PBT indicated the presence 
of alcohol for probable cause purposes. The evidence shows that Ms. 
Kicklighter made her best effort to make sure that Officer Rutherford knew not 
to give the numerical results of the PBT. Appellant’s counsel admitted as 
much.
        We conclude that the trial court did not abuse its discretion in determining 
the prosecutor’s conduct was not “manifestly improper.” Appellant, therefore, 
has not met her burden on the first prong of the Ex parte Peterson analysis. 
Moreover, we need not look to the remaining prongs. See Peterson, 117 
S.W.3d at 816 n.55 (stating that “[i]f the prosecutor’s conduct, viewed 
objectively, was not ‘manifestly improper,’ then the double jeopardy inquiry 
ends at this first stage”). Accordingly, we hold that because the trial court did 
not abuse its discretion in determining that the prosecutors did not intentionally 
or recklessly cause appellant to request a mistrial, double jeopardy does not bar 
retrial of the case. We overrule appellant’s two points. 

V. Conclusion
        Having overruled appellant’s points on appeal, we affirm the trial court’s 
ruling. 

                                                          SAM J. DAY 
                                                          JUSTICE
 
PANEL B:   DAUPHINOT and GARDNER, JJ.; and SAM J. DAY, J. (Retired, 
Sitting by Assignment).
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: January 8, 2004