

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00349-CR

_____

LINCOLN ANTHONY PEARSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 483rd District Court
Hays County, Texas[1]
Trial Court No. CR-20-1044-C, Honorable Tanner Neidhardt, Presiding

August 4, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

A jury found Lincoln Anthony Pearson, Appellant, guilty of sexual assault[2] and sentenced him to six years' imprisonment. In three issues, Appellant asserts the trial court erred by (1) limiting the scope of his expert witness's testimony, (2) allowing certain

---

[1] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A).

testimony to be read back to the jury, and (3) overruling his objection to the admissibility of extraneous-offense evidence. We affirm.

## BACKGROUND

In September of 2019, the complainant, Vanessa,[3] was twenty-three years old and lived in San Marcos with three roommates. Vanessa's boyfriend of a few weeks, Nicholas Smith, was a friend of Appellant's. On Saturday, September 28, Appellant came to San Marcos and spent the day with Smith, Vanessa, and one of Vanessa's friends. Vanessa had not met Appellant before that day. The group went to a restaurant then returned to Vanessa's apartment complex to swim and socialize. They consumed many alcoholic drinks over the course of the day. Vanessa testified at trial that she was "pretty drunk" and that, because "it was a lot of alcohol," she assumed everybody else was "just as drunk."

When it began to rain, Vanessa wanted to leave the pool and go inside. She could not later recall whether she went to bed or if she passed out. Vanessa testified, "The next thing I remember was waking up. I was on my stomach and [Appellant] was behind me having sex with me." Smith was also in the bed, sleeping on the other side of Vanessa. Vanessa turned around and, upon realizing it was Appellant behind her, began yelling at Appellant, who then shoved her away. Vanessa was still wearing her swimsuit top, but the bottom part of her swimsuit was around her ankles. Vanessa told Appellant to get out. She ran to her closet to find clothes and then called a friend to come pick her up. As

---

[3] To protect the complainant's identity, we use a pseudonym. *See* TEX. CONST. art. I, § 30 (a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process.").

2

Vanessa waited outside the apartment, one of her roommates, Milan, sat with her and asked what happened.

Vanessa later reported to police that Appellant had sexually assaulted her. She sought medical care but declined to be examined by a sexual assault nurse examiner. In November of 2020, Appellant was charged by indictment with sexual assault. Appellant was found guilty by a jury in September of 2024 and subsequently brought this appeal.

**ANALYSIS**

Issue 1: Limitations on Testimony from Defense Expert

In his first issue, Appellant contends that the trial court erred by prohibiting his defense expert from "applying accepted investigative standards to the facts of the case." We review a trial court's ruling on the admissibility of expert testimony under an abuse of discretion standard and will not disturb that ruling unless it falls outside the zone of reasonable disagreement. *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017).

Expert testimony must assist the trier of fact in understanding the evidence or in determining a fact at issue to be admissible. *See* TEX. R. EVID. 702. Such testimony assists the trier of fact when a jury would not be qualified to intelligently determine the issue without the expert's testimony. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (en banc). "[E]xpert testimony must aid—not supplant—the jury's decision." *Id.*

At trial, Appellant called Douglas Deaton, a retired police officer, to testify as an expert witness about police investigations. After a hearing, the trial court found Deaton qualified to testify about the general content of sexual assault investigative protocols but

3

barred his opinion on whether the San Marcos Police Department met those standards in its investigation. On appeal, Appellant contends that the exclusion of Deaton's proposed testimony on the adequacy of the police investigation deprived him of his right to present a complete defense.

We find no abuse of discretion in the trial court's ruling. First, it is clear that the purpose of Deaton's testimony was not to provide expert testimony on the circumstances of the offense. He did not, for example, speak to witnesses or visit the crime scene. Instead, Deaton's testimony was intended to provide an expert opinion that the police department had not conducted a thorough investigation. Whether the police did or did not follow the practices advocated by Deaton was not at issue in this case. Deaton's opinion on the quality of the investigation would not help the jury decide a relevant fact because it did not make any of the elements of the offense more or less likely. *See, e.g., Work v. State*, 07-17-00286-CV, 2019 Tex. App. LEXIS 9790, at *6–8 (Tex. App.—Amarillo 2019, pet. ref'd) (mem. op., not designated for publication) (private investigator's opinion that police investigation was not sufficiently thorough was irrelevant because it would not have been helpful to jury in determining fact in issue).

Moreover, the trial court's limitation on Deaton's testimony did not prevent Appellant from attacking the thoroughness of the police investigation. Appellant was able to, and did, challenge the reliability of the investigators' procedures through cross-examination and question the quality of the investigation before the jury. *See Tillman v. State*, 376 S.W.3d 188, 198–99 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (op. on remand) (where defendant challenged reliability of police identification procedures through cross-examination of eyewitnesses and officer, and attacked their reliability

4

during closing argument, defendant was not effectively prevented from presenting his defense when trial court excluded his expert witness). Thus, the excluded testimony would have furthered Appellant's defensive theory only incrementally.

Therefore, we find no abuse of discretion in the trial court's ruling limiting the scope of Deaton's testimony. We overrule Appellant's first issue.

Issue 2: Response to Jury Question

Next, Appellant argues that the trial court violated article 36.28 of the Texas Code of Criminal Procedure by allowing a readback of testimony that exceeded the jury's specific request, which improperly influenced the jury's deliberations. Article 36.28 of the Code of Criminal Procedure provides that, "if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.28. The trial court has great discretion in determining what testimony is responsive to the jury's dispute, and we will not disturb its ruling unless a clear abuse of discretion and harm are shown. *See Brown v. State*, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994) (en banc).

The note from the jury, submitted during deliberations, read: "The jury would like to: (1) Hear testimony be read back; (2) Because there is a disagreement about whether there is evidence that [Vanessa] said, 'I thought it was you,' regarding the sexual act. (3) The testimony is from Milan." Outside the presence of the jury, the trial court and counsel discussed what the trial court determined was the relevant testimony in response to the

5

jury's request. Appellant's counsel objected that the portion proposed to be read back to the jury went "above and beyond" the question asked by the jury.

The trial court then had the court reporter read a portion of Milan's testimony, consisting of two questions and two answers, back to the jury:

Q: Okay. What did she say to you?

A: Just kept repeating that she didn't know it was [Appellant] and that she didn't really know what happened, pretty much.

[. . .]

Q: Okay. Prior to you asking her that question, what had she said that led you to ask her if she was saying that she'd been raped?

A: That – I guess, she thought that it was [Smith]. And she just kept repeating, "I didn't know it was him. I would never do that to [Smith]. I didn't know it was him." And, I guess, she had turned around. And when she realized it was [Appellant] on top of her and not [Smith], who she fell asleep next to, is when I started hearing screaming.

On appeal, Appellant contends that the trial court's response was overbroad, allowing the repetition of "facts not requested by the jury and highly prejudicial in context."

Here, the jury disagreement concerned what Vanessa said to Milan regarding the identity of the assailant and whether a specific statement was made. Both questions and responses read back to the jury directly address that disagreement. We conclude that the trial court did not abuse its discretion in determining that the reread portion of Milan's testimony was responsive to the specific request from the jury. *See Neal v. State*, 108 S.W.3d 577, 580–81 (Tex. App.—Amarillo 2003, no pet.) (no error where all testimony reread to jury "could reasonably be considered part of the information needed by the jury

6

to resolve its disagreement . . . ."). Because the trial court did not abuse its discretion in responding to the jury's inquiry, we overrule Appellant's second issue.

Issue 3: Evidence of Extraneous Bad Acts

In his final issue, Appellant asserts that the trial court violated article 37.07 of the Texas Code of Criminal Procedure by admitting during the punishment phase testimony about two uncharged extraneous bad acts, despite the State's failure to give proper notice of its intent to introduce the evidence. We review the trial court's decision to admit evidence for an abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010).

Article 37.07 governs the admissibility of evidence during punishment. *See generally* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3. The statute provides that, "[o]n timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." *Id.* art. 37.07, § 3(g). Rule 404(b) requires "reasonable notice" but does not define what constitutes reasonable notice. TEX. R. EVID. 404(b)(2). Under article 37.07, notice is reasonable "only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g). Allowing a defendant access to the State's open file does not, in itself, constitute reasonable notice. *Buchanan v. State*, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995) (en banc). What constitutes reasonable notice depends on the facts and circumstances of each case. *See Hayden v. State*, 66 S.W.3d 269, 272–73 (Tex. Crim. App. 2001).

7

During the punishment phase of trial, the State called Dulce Vaughan, Appellant's former girlfriend and the mother of his child. Vaughan testified to an incident in November of 2018 during which Appellant assaulted her, causing bodily injury. The State then asked Vaughan whether Appellant had "put his hands on [her] other times besides this time." When Vaughan replied affirmatively, the State asked her to describe one of those times. Appellant's counsel then objected to Vaughan testifying as to additional bad acts, stating that he had only received notice of the November 2018 incident. It is undisputed that Appellant requested notice of such evidence pursuant to article 37.07.

The State responded that it had provided a witness memo to Appellant the summer before trial.[4] It was the State's position that the witness memo "would be sufficient notice that we were going to talk about" additional incidents. Appellant's counsel acknowledged receiving the witness memo from the State detailing the two bad acts during the summer before the trial, which occurred in September.

The trial court asked the State whether the witness memo had notice of the additional events, to which the State responded, "Yes, Your Honor. If you would like to see it, it is these – after – this is about this incident and then it starts about the new incident." The trial court clarified, "Is what you're about to cover with this witness what is on this document?" The State confirmed that, indicating, "Yes. So it's this one here, as well as this, so it's these last two bullet-pointed incidents." The trial court then overruled

---

[4] The State concedes that none of the three notices of intent filed pursuant to article 37.07 specified the two bad acts to which Appellant objected.

Appellant's objection. Appellant moved for a mistrial for the punishment phase, which the trial court denied.

Vaughan proceeded to testify about two additional bad acts committed by Appellant, one in which Appellant tackled her and dragged her by the hair when she was leaving a baby shower, and one in which Appellant "ripped" Vaughan's clothes off, shoved her, naked, out of the apartment, and locked her out.

The witness memo reviewed by the parties and the trial court is not part of the appellate record.[5] Appellant did not dispute the State's representation that the witness memo described the additional extraneous offenses at issue. We therefore accept the representation that the witness memo contains such information. *See Pitts v. State*, 916 S.W.2d 507, 510 (Tex. Crim. App. 1996) (en banc) (accepting as true factual assertions made by counsel at trial which could have been, but were not, disputed by opposing counsel).

The purpose of article 37.07, section 3(g), is to avoid unfair surprise, so that the defendant will have adequate time to prepare for the extraneous offense evidence the State will present at trial. *Chimney v. State*, 6 S.W.3d 681, 693–94 (Tex. App.—Waco 1999, no pet.). "The lack of notice does not render the evidence inherently unreliable, but instead raises a question about the effect of procedural noncompliance . . . . Thus, we must analyze how the deficiency of the notice affected appellant's ability to prepare for the evidence." *Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.—Austin 2002, no pet.)

---

[5] After reviewing the document with the trial court, the prosecutor stated, "I can print out another copy for the Court to put into the record for the purpose of this hearing," but the document was not included.

(op. on reh'g); *see also Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) (explaining that improperly noticed extraneous-offense evidence was not injurious "if the defendant was not surprised by the evidence").

In *Hayden v. State*, the Court of Criminal Appeals observed that notice need not be "formalistic" and does not even have to be in writing, so long as actual notice is conveyed. *See* 66 S.W.3d at 273 (notice was sufficient where defendant did not dispute actual notice of uncharged misconduct, which was described in witness statement that was not part of record). Here, Appellant's counsel acknowledged receiving notice of the additional offenses against Vaughan several months before trial and did not claim that he was surprised by the evidence at trial. Under these circumstances, we cannot conclude that the trial court abused its discretion in determining that the State provided reasonable notice. Accordingly, we overrule Appellant's third issue.

## CONCLUSION

Having overruled each of Appellant's three issues, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.

10