IN
THE COURT OF CRIMINAL APPEALS

                                   OF TEXAS

                                                                              

                                                                     AP-74,952



 

 

                                              JUAN JOSE REYNOSO, Appellant[1]

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                                                          ON
DIRECT APPEAL

FROM CAUSE NO. 941651 IN THE 263RD DISTRICT
COURT

                                                             HARRIS
COUNTY



 

 

HOLCOMB,
J., delivered the opinion of a unanimous Court.

 

                                                                  O
P I N I O N

 

Appellant was convicted in May 2004
of capital murder.  Tex. Penal Code 

' 19.03(a).  Pursuant to the jury=s answers to the special issues set
forth in Texas Code of Criminal Procedure Article 37.071, sections 2(b) and
2(e), the trial court sentenced appellant to death.  Art. 37.071, ' 2(g).[2]  Direct appeal to this Court is
automatic.  Art. 37.071, ' 2(h).  Appellant raises six points of error.  We affirm.

In his first point of error,
appellant argues that the trial court erroneously excluded relevant
evidence.  TEX. R. EVID. 401.  Appellant specifically complains about the
exclusion of Defendant=s Exhibit 16, which contains records from the DePelchin
Children=s Center in Houston.  We review a trial court=s decision to admit or exclude
evidence under an abuse of discretion standard. 
Green v. State, 934 S.W.2d 92, 101-102 (Tex. Crim. App. 1996), cert.
denied, 520 U.S. 1200 (1997).  We
will not reverse a trial court=s ruling unless it falls outside the zone of reasonable
disagreement.  Id. at 102.

The records contained in Defendant=s Exhibit 16 pertain to appellant=s brother, Armando Reynoso, who was
referred to the Center for evaluation and treatment in his early teens because
he was having problems at home and at school. 
When appellant attempted to introduce the exhibit at the punishment
phase of the trial, the following exchange occurred:

[DEFENSE COUNSEL]: 
These are Depelchin Children=s Center
records that we now marked as Exhibit 16. 
It would be our intention to offer those records before the Jury.  

 








And
- - and in support of that I would tell the Court, basically, that those
records would seem to include some matters that have already been testified to
regarding the abuse that may have been going on in the family by Armando.  And add some details about the abuse
including potentially an investigation regarding abuse by Armando physically
and perhaps sexually toward Juan Reynosa. 
They also conclude - - 

 

THE
COURT: The word that bothers me is perhaps. 
Either they reference him or they don=t.

 

[DEFENSE
COUNSEL]: They do reference him.  And
they also reference that at - - at least one or more of the counseling sessions
involving the family, at the time that the complaints were made, the family was
required or in some way did counseling through Depelchin.

 

And
[appellant] was actually a part of those, at least one or more of those counseling
sessions which are reflected in the records. 

 

Over
and above that, those records would certainly seem to indicate that there was a
dynamic going on in the family when Armando was around.  And that has certainly been verified by
several of the witnesses that Armando was certainly a - - a bad influence on
the family when he was living there.  And
was eventually required by Mr. Reynoso, Sr., to - - to leave and live
elsewhere.

 

I
think that is when he was said to have gone to Corpus, but - - 

 

*                      *                      *

 

[PROSECUTOR]:
Judge, again, the State=s position, these apply to his brother who was 13
years old at the time.  There are very,
very few references in these records that have anything to do with this
defendant.

 

Therefore,
it=s our position that these records are totally
irrelevant at this portion of the trial and [have] nothing to do with this
defendant.

 

THE
COURT: Well, it will be the rule of the Court, I=ll be
happy to look at them.  But anything that
doesn=t specifically pertain to the defendant is not
relevant to him with regard to truth to any other family member.

 

We
can carry that to the extreme and get medical records in, I guess, of everybody
that has any contingency to him.

 

If
it pertains to him, happy to allow it. 
But if it doesn=t pertain to treatment regarding this defendant, I don=t find it to be relevant.








Sustain
the State=s objection.

 

[DEFENSE
COUNSEL]: Okay.  And I would ask the
Court to examine at least the - - the highlighted and areas tagged with the red
tags.  Certainly we feel are relevant to
testimony given in this case and relevant to matters involving and surrounding
what was going on for Juan Reynosa in the home of Mr. Reynosa, Jr.

 

The
problem that I have with trying to - - because the easy answer, of course,
would be we just pull the pages and offer the pages that reference Juan
Reynosa.  Then the Jury has no context,
no picture to - - to look at them with respect to what were actually
surrounding those references to Mr. Reynosa.

 

*                      *                      *

 

THE
COURT: Well, I=ve looked over these, Mr. Hayes.  And I don=t see
any relevance toward the defendant at all that would make these - - well,
Defense Exhibit 16, of any value to the Jury.

 

So
unless there is something else you wish to say, I will rule with the State and
deny their admissibility and the motion to admit will be overruled.

 

Appellant testified at punishment
that Armando beat him up occasionally. 
He acknowledged that these were isolated incidents and that he was not
physically abused on an ongoing basis. 
Appellant=s friend, Ronald Ramos, recalled one instance when appellant
had a Ablack eye@ and Abusted lip@ and told Ramos Athat his brother beat him up.@ 
Appellant=s sister, Roxanne Aguirre, testified that their parents
converted the laundry room into an extra bedroom for Armando A[b]ecause him and [appellant] would
fight all the time.@  No other witnesses
testified that appellant suffered any type of abuse at the hands of
Armando.       








The records contained in Defendant=s Exhibit 16 were prepared during the
evaluation and treatment of Armando at least fourteen years prior to appellant=s trial.  The records state that appellant and his
sisters attended some of the family counseling sessions, but there are very few
references to appellant.  The only
statements in the records regarding appellant are that he was Agetting in trouble at school@ and that he was Asleeping in the bed with Armando
because >he [was] afraid of the dark.=@ 
Appellant=s parents told the therapist that Armando was aggressive and
hostile towards his siblings, and that he was Aacting out sexually with his siblings
by exposing his penis and asking them to touch it.@ 
These were general statements with regard to Armando=s treatment of all of his siblings,
not just appellant.  Given these facts,
we conclude that the trial court did not abuse its discretion in sustaining the
State=s relevancy objection and excluding
Defendant=s Exhibit 16.  Point of error one is overruled.

In point of error two, appellant
argues that the exclusion of Defendant=s Exhibit 16 violated his rights
under the Eighth Amendment to the United States Constitution.  Appellant, however, failed to object on this
basis at trial.  TEX. R. APP. P. 33.1.  He also fails on appeal to provide separate
authority or argument for his constitutional claim.  TEX. R.
APP. P. 38.1; Heitman v. State,
815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991).  Point of error two is overruled.








 In point of error three, appellant asserts
that trial counsel rendered ineffective assistance by failing Ato object to the admission of
damaging hearsay evidence which violated appellant=s right to confront the witnesses
against him under the Sixth Amendment to the Constitution of the United States.@ 
Appellant specifically complains about the punishment testimony of
Harris County Sheriff=s Deputy James Lowery regarding an incident that occurred in
the Harris County Jail in July 2002. 
Lowery testified on direct examination that an inmate named AGarcia@ told him that appellant assaulted
him by hitting him in the head. 

Under the two‑pronged analysis
set out in Strickland v. Washington, 466 U.S. 668 (1984), appellant must
first show that counsel=s performance was Adeficient.@ 
Id. at 687.  Second, he
must show that counsel=s deficient performance prejudiced his defense.  Id. 
Appellate review of counsel=s representation is highly
deferential and strongly presumes that counsel=s actions fell within the wide range
of reasonably professional assistance.  Scheanette
v. State, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004), cert. denied, 125
S. Ct. 872 (2005).  It is appellant=s burden to overcome the presumption
that, under the circumstances, the challenged action might be considered sound
trial strategy.  Chambers v. State, 903
S.W.2d 21, 33 (Tex. Crim. App. 1995).








Ineffective assistance of counsel
claims are not built on retrospective speculation; instead, they must Abe firmly founded in the record.@ 
Scheanette, 144 S.W.3d at 510. 
Under most circumstances, the record on direct appeal will not be
sufficient to show that counsel=s representation was so deficient and so lacking in tactical
or strategic decision making as to overcome the presumption that counsel=s conduct was reasonable and
professional.  Id.  The trial record rarely contains sufficient
information to permit a reviewing court to fairly evaluate the merits of such a
serious allegation.  Id.  In the majority of cases, the record on
direct appeal is simply undeveloped and cannot adequately reflect the failings
of trial counsel.  Id.

Although counsel did not object on
hearsay or confrontation grounds, he did elicit Lowery=s testimony on cross-examination that
Garcia also said his injury was a mistake that occurred during horseplay.  We can only speculate as to the reasons behind
counsel=s actions.  Without more, we must presume that counsel
acted pursuant to a reasonable trial strategy. 
Id.  Point of error
three is overruled.

In point of error four, appellant
alleges that the trial court improperly sustained the State=s objection when defense counsel made
the following argument:

[DEFENSE
COUNSEL]:  Then you have to look at why
would a person, why would Mr. Reynosa say what he did if he didn=t do it?

 

Well, there is a lot of things that could influence
that.  And you need to look at >em.

 

Because you guys don=t - -
you=re not out on the street where Mr. Reynosa is.  You=re not
out with the people that he hangs out with like Asa Cruz and Mr. Reyes and Mr.
Padilla.  

 

But why would a young man ever admit to something like
that?  Why would he even tell his friends
that he did it?

 

He would have gotten into trouble before, for bragging
rights for trying to enhance their reputation.

 

He lives in a different world than any of you live
in.  He lives in a world where it becomes
important to have tattoos.  Where it
becomes important to brag about things that maybe you didn=t do.

 








Why
would he tell his friends?

 

To
enhance his reputation.

 

[PROSECUTOR]:  I=m going
to object.  That=s way outside the scope of evidence.  There is no evidence of that whatsoever.

 

THE
COURT:  I=ll
sustain that.  

 

Please
stay within the record.

 

[DEFENSE COUNSEL]: You have
to make a determination whether you believe that Mr. Reynosa was telling the
truth when he gave this statement, or whether he was not telling the truth.

 

It
is - - I know that it=s a difficult thing for jurors to disregard something
as obvious as what=s stated on that confession . . .

 

Appellant alleges that the argument
was proper because it was a reasonable deduction from the evidence.  Even if we were to assume arguendo that
the trial court abused its discretion in sustaining the objection, we conclude
that any error was harmless because it did not affect appellant=s substantial rights.  TEX. R. APP. P. 44.2(b).  The prosecutor objected to appellant=s argument, but did not request an
instruction to disregard it or move for a mistrial.  Further, the trial court did not prevent appellant
from  making an argument essential to his
defense.  After the trial court sustained
the objection, defense counsel continued to insinuate that appellant was
untruthful in his statement.  Point of
error four is overruled.








In point of error five, appellant
contends that the mitigation special issue violates the Eighth Amendment for
various reasons.  First, he asserts that
the mitigation special issue is unconstitutional because it omits a burden of
proof.  Next, he argues that the mitigation
special issue makes impossible any meaningful appellate review of the jury's
determination.  Finally, he argues that
Article 44.251  requires meaningful
appellate review of the sufficiency of the evidence supporting the jury=s negative answer to the mitigation
special issue.  We have previously
addressed and rejected these claims.  Resendiz
v. State, 112 S.W.3d 541, 549 (Tex. Crim. App. 2003), cert. denied, 124
S.Ct. 2098 (2004); Jackson v. State, 33 S.W.3d 828, 840‑841 (Tex.
Crim. App. 2000), cert. denied, 532 U.S. 1068 (2001); Prystash v.
State, 3 S.W.3d 522, 535‑36 (Tex. Crim. App. 1999), cert. denied, 529
U.S. 1102 (2000); Tong v. State, 25 S.W.3d 707, 715 (Tex. Crim. App.
2000), cert. denied, 532 U.S. 1053 (2001).  Point of error five is overruled.

In point of error six, appellant
argues that A[t]he term >probability= in the future dangerousness special
issue impermissibly dilutes the reasonable doubt standard.@ 
In support of his argument, appellant cites Apprendi v. New Jersey, 530
U.S. 466 (2000), Ring v. Arizona,  536 U.S. 584 (2002), and Blakely v.
Washington, 124 S.Ct. 2531 (2004).         In Woods v. State, 152 S.W.3d 105
(Tex. Crim. App. 2004), we held:

In Blakely,
Ring, and Apprendi, a trial judge made findings that increased the
defendants= sentences beyond the statutory maximum.  The Supreme Court held in these cases that a
finding, other than a prior conviction, that increases the defendant=s sentence beyond the maximum statutory punishment
must be found by a jury beyond a reasonable doubt.  Article 37.071 satisfies these requirements.

 








Id. at 121.  We have also held that the
inclusion of the term Aprobability@ does not render the future dangerousness special issue
unconstitutional.  Rayford v. State, 125
S.W.3d 521, 534 (Tex. Crim. App. 2003); Robison v. State, 888 S.W.2d
473, 481 (Tex. Crim. App. 1994), cert. denied, 515 U.S. 1162
(1995).  Point of error six is overruled.   

We affirm the judgment of the trial
court.

 

 

Delivered: December 14, 2005

 

Do Not Publish    











[1]  Some of the trial court=s documents reflect the name AReynosa@
while others reflect the name AReynoso.@ 
This Court will use the AReynoso@ spelling in this opinion. 





[2]  Unless otherwise indicated, all references to
Articles refer to the Texas Code of Criminal Procedure.